ROBERT T. SHELDON, individually and as executor of the estate of Charles A. Young, deceased, *Appellant*, v. CORA P. POWELL, LIBBIE I. BLEEKMAN, EVA L. HOLLAND, LEONA G. JOHNSON, and RENA B. ALLEN, jointly and severally, and as constituting the S. Cornelia Young Memorial Library, C. W. ALLEN, as Guardian *Ad Litem* for Charles Young Becker, a minor, and TOWN OF DAYTONA BEACH, *Appellees*.

Division A.

Opinion filed April 8, 1930.

784

*Hull, Landis & Whitehair* and *L. W. Pope,* for Appellant;

*Gardner & Brass,* for Appellees.

TERRELL, C. J.—Charles A. Young of Daytona Beach, Florida, died testate in July, 1919. His last will and testament among others carried the following provision:

"I give and bequeathe to the S. Cornelia Young Memorial Library, at Daytona Beach, Volusia County, Florida, the sum of fifteen thousand dollars."

Appellant as executor of the estate of said Charles A. Young declined to release the legacy so provided to appellees as representatives of S. Cornelia Young Memorial Library, unless the said appellees would execute a bond

to him for his protection. Appellees refused to execute
the said bond and brought their bill of complaint as pro-
vided by Chapter 7857, Acts of 1919, Laws of Florida
(Sections 4953 and 4954, Comp. Gen. Laws of 1927), pray-
ing for an adjudication of their rights under and by virtue
of the terms of the said will. There was an answer in
which was incorporated a demurrer to the bill of com-
plaint both of which imposed substantially the same de-
fense. On final hearing the demurrer was overruled and
a decree in favor of complainants, appellees here, was en-
tered. Appeal was taken for that decree.

In his appeal appellant raises two questions which may
be stated as follows: (1) If appellees were entitled to
any relief whatever they should have proceeded under
Section 3735, Rev. Gen. Stats. of 1920 (Section 5607, Comp.
Gen. Laws of 1927) which is exclusive as to such matters
as this. (2) Chapter 7857, Acts of 1919, Laws of Florida
(Sections 4953 and 4954, Comp. Gen. Laws of 1927) under
which appellees elected to seek their relief is unconstitu-
tional and void.

Section 3735, Rev. Gen. Stats. of 1920, in effect pro-
vides that before an executor or administrator shall be
compelled to pay over any legacy prior to final settlement
of his accounts the legatee shall file a petition before the
county judge setting forth the facts which entitle him to
the relief prayed for and the court shall proceed to hear
and determine the matter as per rule prescribed therein.

Sections One and Two of Chapter 7857, Acts of 1919
(Sections 4953 and 4954, Comp. Gen. Laws of 1927)
authorizing declaratory decrees in this State are as follows:

"Section 1. That any person or corporation claim-
ing to be interested under a deed, will, contract in
writing, or other instrument in writing, may apply
by bill in chancery to any court in this State having

equity jurisdiction for the determination of any question of construction arising under the instrument and for a declaration of the rights of the person or corporation interested, whether or not further relief is or could be claimed, and such declaration shall have the force of a final decree in chancery.

"Section 2. That all proceedings instituted under the provisions of this Act shall be in conformity with the law and rules of court governing other proceedings in chancery, as far as same may be applicable. And the Supreme Court in this State is hereby authorized and empowered, whenever it shall be deemed necessary, to prescribe additional rules applicable to proceedings under the provisions of this Act, and to limit or restrict the application of existing rules."

We think that appellees might have proceeded under Section 3735, Rev. Gen. Stats. of 1920, to have the legacy brought in question released to them but we do not think that remedy exclusive. Chapter 7857, Acts of 1919, authorizing declaratory decrees, neither repeals nor is it incompatible with Section 3735, Rev. Gen. Stats. of 1920. As to the question involved here it is merely cumulative so appellees had their option to pursue either remedy. 9 R. C. L. 957 and 964.

The declaratory judgment or decree is not an American conception. It has its analogue in both the Roman and the English law and is not new in this country. Developments in the United States during late years have raised it to a place of great importance in our jurisprudence. It has been adopted in twenty-three states of the Union, was adopted in England in 1850, was modified in 1852 and 1858, and has been the law of Scotland and some of the countries of the continent for two hundred years. In some states like Michigan the act providing for declaratory re-

lief extends to any action in any court of record regardless of the right to consequential relief, while in other states it in terms extends only to cases involving an actual controversy in which consequential or coercive relief may be granted. In its original conception it was concerned only with questions of status or property rights connected therewith and the construction of wills and other legal instruments, while at this time as to subject matter, its field of operation is almost unlimited.

The Michigan act authorizing declaratory judgments was held unconstitutional by the Supreme Court of that state because as the Court said, it imposed powers not judicial on the judiciary, that is to say it attempted to require the courts of that state to decide moot or controversial questions and to make them the authorized legal advisers of the people. Anway v. Grand Rapids Railway Co., 211 Mich. 592, 179 N. W. R. 350, 12 A. L. R. 26 and note 52, see also 19 A. L. R. 1124.

Dicta in several cases decided by the Supreme Court of the United States may be taken as a suggestion that the Federal courts cannot be legally authorized to enter declaratory judgments. Liberty Warehouse Company v. Grannis, 273 U. S. 70, 47 Sup. Ct. R. 282, 71 L. Ed. 541; Liberty Warehouse Company v. Burley Tobacco Growers Co-operation Marketing Association, 276 U. S. 71, 88, 48 Sup. Ct. R. 291, 294, 72 L. Ed. 473; Willing v. Chicago Auditorium Association, 277 U. S. 274, 48 Sup. Ct. R. 507, 509, 72 L. Ed. 880. The dicta in these cases appears to have been prompted by the construction given by that court to the words "cases" and "controversies" as used in Section 2 of Article III of the Federal Constitution. Muskrat v. United States, 219 U. S. 346, 31 Sup. Ct. R. 250, 55 L. Ed. 246.

In the Muskrat case it was held that by reason of the

terms of Section 2 of Article III of the Federal Constitution the exercise of judicial power by the Federal courts was limited to "cases" and "controversies" as used in that instrument. This rule, if approved and adopted by the Federal court when squarely presented, is not necessarily binding on the courts of this State because there is no similar provision in our Constitution and its provisions defining the jurisdiction of our courts would admit of no such interpretation. This view is amply supported by decisions in other jurisdictions. At the time of the dicta in the Federal cases at least eight of the twenty-three states having statutes providing for declaratory relief had held them valid. State v. Grove, 109 Kan. 619, 201 Pac. R. 82; Blakeslee v. Wilson, 190 Cal. 479, 213 Pac. R. 495; Miller v. Miller, 149 Tenn. 463, 261 So. W. R. 965; In re Kariher Petition No. 1, 284 Pa. 455, 131 Atl. R. 265; Patterson's Executors v. Patterson, 144 Va. 113, 131 So. E. R. 217; Board of Education of Rochester v. Van Zandt, 234 N. Y. 644, 138 N. E. R. 481; Braman v. Babcock, 98 Conn. 549, 120 Atl. R. 150; McCrory Stores Corporation v. Braunstein Inc., 102 N. J. L. 590, 134 Atl. R. 752. The Federal case of Fidelity National Bank and Trust Company of Kansas City et al. v. Swope et al., 274 U. S. 123, 47 Sup. Ct. R. 511, 71 L. Ed. 959, and cases there cited may be construed as upholding the principle as announced by the foregoing state courts. See also Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U. S. 716. A wealth of literature has lately been produced on the subject, much of which is cited in Freeman on Judgments (5th Ed.) 2780-2792. The Declaratory Judgment by Prof. Edwin M. Borchard, Vol. 28, Yale Law Journal. See also the "Supreme Court and the Declaratory Judgment" by Prof. Edwin M. Borchard, American Bar Association Journal for December, 1928, and address of Senator Wag-

ner of New York, Congressional Record, February 1, 1930, all of which support the propriety and the validity of declaratory judgments.

Under the English practice, provision for declaratory judgments was established by rule of court which though broad in application is discretionary. The procedure for a declaratory judgment has become so important in that country that it is said that sixty per cent of the equity cases are now brought under it. The English reports contain many and various applications for declarations of right but the decisions show that they have at all times been exercised sparingly, with care and jealousy, and with extreme caution. Russian Commercial and Industrial Bank v. British Bank (90 L. J. K. B. n. s. 1089) (re Staples 1918, 9 Ch. 122) ; Austin v. Collins, 54 L. T. n. s. at p. 905, 88 L. T. N. S. at p. 550. The English and some of the American courts proceed on the theory that provision for a declaratory judgment involves a mere matter of practice and procedure and does not go to the matter of jurisdiction on the part of the court to enter. On the question of jurisdiction as determined by constitutional limitation the English decisions would perhaps be of doubtful value in this country since the English have no written constitution defining the powers and jurisdiction of its judiciary.

In its inception the purpose of declaratory judgment was to ''serve as an instrument of preventive justice,'' to render ''practical help'' in determining issues and to adjudicate the rights or status of parties without the peril of committing a crime or resorting to violence or breach to put the legal machinery in motion. It is inhibitory of injury. ''Within the sphere of anticipatory and preventive justice its use should be extended, its scope kept wide and liberal, and its boundaries elastic. But it does not fit

every occasion and it does not call for the scrapping of the balance of the system of remedies and actions.'' We have examined a great many cases involving applications for declaratory judgments and while the authorities are not altogether uniform they have generally been refused in the following cases: (1) Where it would serve no useful purpose, (2) Where special tribunals have been provided to handle specified controversies, (3) Where the facts sought to be litigated were hypothetical, presented a ''made case'' or were uncertain of occurrence, (4) The question raised must be real and not theoretical and the person raising it must have a bona fide interest in it, and (5) There must be a defender with a bona fide right to defend. This classification was made on the basis of early decisions. Instances and types of cases were also listed in which it would be proper to render a declaratory decree but on account of the growing importance of the subject these have multiplied to such an extent that any list announced yesterday would be of little practical utility today.

The Florida law authorizing declaratory decrees (Chapter 7857, Acts of 1919, Sections 4953 and 4954, Comp. Gen. Laws of 1927) is similar to that of New Jersey and is restricted to suits in equity by those interested under a deed, will, contract in writing, or other instrument in writing, ''for the determination of any question of construction arising under the (said) instrument and for a declaration of the rights of the person or corporation interested, whether or not further relief is or could be claimed.'' It does not, like the law of Kansas and some other states, in terms require an ''actual controversy'' as a basis for the matter presented but it requires that all proceedings brought under it shall conform to law and rules of court governing other proceedings in chancery in so far as same

may be applicable. It also authorizes this Court in its discretion to prescribe additional rules for the governance of proceedings under the act, and to limit the application of existing rules applicable to such proceedings.

Under the power vested in it by the act authorizing declaratory decrees this Court may prescribe rules for bringing suits to secure and enforce such decrees, or it may follow the practice adopted by the English and the New York courts of exercising its discretion sparingly and with caution and by a gradual process of judicial inclusion and exclusion define the manner in which its discretion will be exercised in these matters. If the primary virtue of the declaratory decree is to forestall injury we think the English and New York rule the safer rule to follow. The discretion of the court should not be hardened into rule but should at all times be open to render, or to decline to render, a declaratory decree.

In support of his contention that Chapter 7857, Acts of 1919, authorizing declaratory decrees is unconstitutional appellant relies entirely on Anway v. Grand Rapids Railway company, *supra*. As heretofore stated in this opinion that case is the only one we have found in which an act of similar import as that under consideration has been stricken down. As against this case holding the Michigan act bad we have cited decisions from eight states holding similar acts valid. It is also pertinent to mention that similar acts have been adopted in twenty-three states of the Union and during the last ten years some three hundred cases have been reported affecting declaratory judgments or decrees under them. This does not take into account the large number of English cases involving the same subject matter.

The decision of the Michigan court in Anway v. Grand Rapids Railway Company was grounded on the fact that

the act under consideration imposed non-judicial functions on the courts of that state. No such contention can be made against the act under review here. That part of Section 11 of Article V of our Constitution defining the jurisdiction of circuit courts in this State is as follows:

"The Circuit Court shall have exclusive original jurisdiction in all cases in equity, also in all cases at law, not cognizable by inferior courts, and in all cases involving the legality of any tax, assessment, or toll; of the action of ejectment and of all actions involving the titles or boundaries of real estate, and of all criminal cases not cognizable by inferior courts; and original jurisdiction of actions of forcible entry and unlawful detainer, *and of such other matters as the Legislature may provide.*"

Section Five of the same article in part provides that, "the Supreme Court shall have appellate jurisdiction in all cases at law and in equity originating in the Circuit Courts." The case under review originated in the Circuit Court.

Under our tripartite scheme of government *"such other matters as the Legislature may provide"* could have reference to none other than judicial matters or functions. If the power to enter declaratory judgments or decrees is one of jurisdiction rather than one of practice and procedure the concluding clause of the Constitutional provision as above quoted would be ample to authorize and support them. It is not out of place to state here, however, that the English courts have treated the matter as one of practice and procedure exclusively. Guaranty Trust Company v. Hannay and Co., 2 K. B. 536 (1915) 12 A. L. R. 1, text 13 to 26. The Supreme Court of Connecticut also treats the matter of entering declaratory judgments as one of

practice and procedure rather than one of jurisdiction. Braman v. Babcock, 98 Conn. 549, 120 Atl. R. 150. Decisions in some other jurisdictions are silent on this point. Jurisdiction has reference to the power of a court to adjudicate or determine any issue or cause submitted to it while practice or procedure has reference to the manner in which the power to adjudicate or determine is exercised. If the statute in other words imposes on the court new and different matters to adjudicate, its jurisdiction has been affected but if it merely provides a new way for dealing with a function already within its jurisdiction it is dealing solely with a matter of practice and procedure. Guaranty Trust Company v. Hannay *supra*. In either event the Legislature had power to pass the act and whether or not it involved a question of jurisdiction or one of practice and procedure is immaterial and not necessary to answer in this case.

Rendering a declaratory decree is no less a judicial act when made before a right is invaded and where consequential relief is not sought or given. Braman v. Babcock, *supra*. Various and sundry proceedings authorized under the law of this state amount to nothing more than a declaratory judgment or decree. They merely determine the rights or status of the parties and are not followed by a coercive decree for damages, injunction, specific performance, or some other form of coercive relief. Among these may be mentioned, suits to quiet title and remove cloud from real estate, suits to declare a title impressed with a trust, suits re-establishing lost records and papers, suits to test the validity of bond issues, adoption of children, removing disabilities from minors, establishing drainage districts, bills *quia timet,* and others. Except for the coercive element in the judgment or decree we understand that there is no difference between a declaratory judgment or decree and any other judgment between opposing par-

ties. Under the state of our statute it may be possible for the complainant to pray for a declaration of his rights and to join with their prayer one for coercive relief.

The common law judgment cannot be secured until a right has been invaded or an injury imposed while the declaratory decree contemplates that parties may be in doubt as to their rights and that they may have a judicial determination of them before wrong has been committed or damage done. We see no constitutional objection to the act assaulted. We think further that it may be made to serve a very useful purpose.

It is also contended that the bequest brought in question is invalid in that it is impossible to be executed and that the *cy pres* doctrine cannot be applied to it to make its execution possible.

The *cy pres* rule or doctrine is this: Where a testator in his will evidences a general intention to be executed in a prescribed manner, if such intention cannot be executed in accordance with the terms of the will it may be done with as close proximity to the terms of the will as is reasonably possible. Bouvier Law Dictionary and cases cited. We recognize the *cy pres* rule in this State. Lewis v. Gaillard, 61 Fla. 819, 56 So. R. 281.

In this case the bequest was to the ''S. Cornelia Young Memorial Library, at Daytona Beach, Volusia County, Florida.'' Suit is brought to recover the bequest in the name of ''Cora P. Powell and others jointly and severally constituting the S. Cornelia Young Memorial Library Association.'' There is no direction in the will as to the application of the legacy. It would be natural to assume that the testator intended that it should be used to make the ''S. Cornelia Young Memorial Library'' a bigger, better, and more efficient instrument of its kind in the community. Appellees are the legal representatives of the

legatee and there is no charge that they intend using the legacy for any other purpose. The testator had testamentary capacity, the legacy was within his power to make, and the appellees are the ones in whose custody he purposed that it should be placed for application. The manner of its application is in their discretion so long as used to further the general purposes and functions of the legatee. This being the situation the provisions of the will can be carried out so there is no occasion to apply the *cy pres* rule.

The decree of the Chancellor is therefore affirmed.

Affirmed.

ELLIS, AND BROWN, J. J., concur.

WHITFIELD, P. J., AND STRUM AND BUFORD, J. J., concur in the opinion and judgment.