## ALABAMA *v.* ARIZONA ET AL.

No. —, original. Argued January 9, 1934.—Decided February 5, 1934.

*Mr. Wm. Logan Martin,* with whom *Mr. Thomas E. Knight,* Attorney General of Alabama, and *Mr. Perry W. Turner* were on the brief, for plaintiff.

*Mr. Wm. A. Schnader,* Attorney General of Pennsylvania, and *Mr. Raymond T. Nagle,* Attorney General of Montana, argued the cause for the defendant States, and briefs were filed as follows: by *Mr. Arthur T. LaPrade,* for Arizona; *Messrs. U. S. Webb* and *W. R. Augustine,* for California; *Messrs. Paul P. Prosser, Norris C. Bakke,* and *Allen Moore,* for Colorado; *Mr. Bert H. Miller,* for Idaho; *Messrs. Philip Lutz, Jr.,* and *Joseph W. Hutchinson,* for Indiana; *Messrs. Edward L. O'Connor, Walter F. Maley,* and *J. M. Parsons,* for Iowa; *Messrs. Bailey P. Wootton* and *S. H. Brown,* for Kentucky; *Mr. Harry H. Peterson,* for Minnesota; *Messrs. Raymond T. Nagle* and *Jeremiah J. Lynch,* for Montana; *Messrs. William A. Stevens* and *Duane E. Minard,* for New Jersey; *Messrs. John J. Bennett, Jr.,* and *Henry Epstein,* for New York; *Messrs. Dennis G. Brummitt* and *A. A. F. Seawell,* for North Carolina; *Messrs. John W. Bricker, W. Dale Dunifon,* and *Perry L. Graham,* for Ohio; *Mr. I. H. Van Winkle,* for Oregon; *Mr. Wm. A. Schnader,* for Pennsylvania;

*Messrs. G. W. Hamilton, John W. Hanna,* and *E. P. Donnelly,* for Washington; and *Messrs. James E. Finnegan* and *J. E. Messerschmidt,* for Wisconsin.

MR. JUSTICE BUTLER delivered the opinion of the Court.

For the purpose of invoking original jurisdiction as " to Controversies between two or more States " (Const., Art. III, § 2) Alabama lodged with the clerk and applied for leave to file a complaint against 19 States praying that the court adjudge invalid, because in violation of the commerce clause of the Federal Constitution, statutes by them respectively enacted to regulate or prohibit sales of articles produced by convict labor and an Act of Congress approved January 19, 1929, 45 Stat. 1084, effective January 19, 1934, to divest in certain cases such products of their interstate character. Responding to our orders to show cause why leave should not be granted, 17 of the States submitted returns suggesting that the complaint is multifarious and fails to allege facts sufficient to entitle Alabama to any relief. At the hearing upon the questions so raised, counsel for Alabama obtained leave to, and on a later day did, submit an amendment eliminating 14 States including those that merely regulate and some that prohibit sales of convict-made goods, leaving only Arizona, Idaho, Montana, New York and Pennsylvania.

Each of the assailed state statutes, while not in all respects the same as the others, forbids the sale upon the open market of any goods produced wholly or in part by convicts of other States and prescribes penalties for violation. The Act of Congress declares that, with exceptions which need not be specified here, goods produced by convict labor and transported into any State shall be subject to the laws of that State to the same extent and in the same manner as if there produced.

The substance of the complaint follows. Alabama's prison population averages about 5,500 and in connection with its prisons it has agricultural lands, cotton mills and a shirt factory. About 1,050 inmates do farm work for the production of cotton and potatoes, and about 1,250 operate spindles and make shirts. In 1927 the State entered into a contract with a manufacturing company pursuant to which it sold the latter cotton goods made in its mills and, for hire at the rate of 75 cents per dozen shirts made, furnished convict labor to be employed in the prison factory. The contract expired March 31, 1933, and, the company having declined to renew or extend it, the parties agreed that during the ensuing quarter the State would sell the company prison-made goods for 5 cents a yard and furnish the convict labor for 54 cents per dozen shirts.

While the contract was in force the company sold some of the convict-made products in each of the 19 States originally named as defendants. In round figures, sales amounted annually to $347,000, of which it received for the goods sold in Arizona $1,000, Idaho $10,000, Montana. $10,000, New York $30,000, Pennsylvania $25,000. For the material and labor furnished by it Alabama received the equivalent of 30 per cent. of the amounts for which the company sold the goods. Because of the Act of Congress and state statutes in question Alabama is unable to make any " firm agreement " for the sale of its prison-made cotton goods or for the employment of its convicts. In the second quarter of 1933 it received for labor $11,500 less than was paid it in the preceding quarter. The lower rate of compensation will continue during the rest of 1933. And enforcement of the statutes in question will prevent Alabama from selling in defendant States potatoes produced by the labor of its convicts.

Alabama's investment in the cotton mills and shirt factory exceeds $300,000 and will be valueless as a result of

its inability to find an employer for its convict labor and a market for its prison-made goods. The cost of maintaining unemployed convicts will be about $550,000 annually. Without employment convicts cannot be treated appropriately for their rehabilitation and the promotion of the good order and welfare of the State. The very existence of the assailed enactments is sufficient to bring about the unemployment which will continue unless their enforcement is enjoined.

If Alabama is compelled to provide other employment, it will have to expend about $1,000,000 for the construction of plants for the manufacture of things to be used by the inmates of its eleemosynary institutions and in and about other state activities. As presently employed its prisoners are divided into night and day shifts so as to avoid overcrowding of the prisons. And, if the State does not provide other industrial activities it will have to expend about $100,000 for additional space to house its convicts.

1. There is no test or rule of general application by which to determine whether a complaint in equity is multifarious. That question is to be decided by the court in the exercise of sound discretion having regard to the facts alleged, circumstances disclosed and the character of the relief sought. *Oliver* v. *Piatt,* 3 How. 333, 411. *Nelson* v. *Hill,* 5 How. 127, 132. *Shields* v. *Thomas,* 18 How. 253, 259. *Fitch* v. *Creighton,* 24 How. 159, 163–164. *Brown* v. *Guarantee Trust Co.,* 128 U.S. 403, 410. Unless necessary for the prompt, convenient and effective administration of justice, a suit by one State against several States to set aside a statute of each is properly to be regarded as multifarious. There has been suggested no reason to sustain Alabama's complaint, as it stood before amendment, against the objection of misjoinder of parties defendant and of causes of action. Cf. *Hale* v. *Allinson,* 188 U.S. 56, 74.

The amendment of the bill serves merely to obviate objections that are based on dissimilarity of the state enactments. It is not shown that the joinder of five States is necessary to avoid a multiplicity of suits or that it will substantially serve the convenience of Alabama or of the court. Alabama does not claim concert of action on the part of the defendants or that they are jointly liable in respect of any matter referred to in the bill. The enforcement of the statutes attacked would prohibit the sale of Alabama's prison products in the five States named. If one is repugnant to the commerce clause, all transgress. Alabama cities *Bitterman* v. *Louisville & Nashville R. Co.*, 207 U.S. 205. Considerations of convenience that in suits between private parties reasonably may justify exercise of discretion in support of such joinders have no bearing in a case such as this. If, in a suit brought by Alabama against one of these States, this court should hold the assailed statute invalid and enjoin its enforcement, the decision would be authoritative and controlling as a precedent in all courts, state and federal. Presumably no other State would attempt on similar facts to enforce a like measure, and Alabama would have no occasion to invoke our jurisdiction further. The amended bill is multifarious.

2. This court may not be called on to give advisory opinions or to pronounce declaratory judgments. *Muskrat* v. *United States*, 219 U.S. 346. *Willing* v. *Chicago Auditorium Assn.*, 277 U.S. 274, 288, and cases cited. *Nashville, C. & St. L. Ry.* v. *Wallace*, 288 U.S. 249, 261–262. Its jurisdiction in respect of controversies between States will not be exerted in the absence of absolute necessity. *Louisiana* v. *Texas*, 176 U.S. 1, 15. A State asking leave to sue another to prevent the enforcement of laws must allege, in the complaint offered for filing, facts that are clearly sufficient to call for a decree in its favor.

Our decisions definitely establish that not every matter of sufficient moment to warrant resort to equity by one person against another would justify an interference by this court with the action of a State. *Missouri* v. *Illinois*, 200 U.S. 496, 520–521. *New York* v. *New Jersey*, 256 U.S. 296, 309. *North Dakota* v. *Minnesota*, 263 U.S. 365, 374. Leave will not be granted unless the threatened injury is clearly shown to be of serious magnitude and imminent. *Missouri* v. *Illinois, supra,* 521. In the absence of specific showing to the contrary, it will be presumed that no State will attempt to enforce an unconstitutional enactment to the detriment of another. Cf. *Ex parte La Prade,* 289 U.S. 444, 458. The burden upon the plaintiff State fully and clearly to establish all essential elements of its case is greater than that generally required to be borne by one seeking an injunction in a suit between private parties. *Connecticut* v. *Massachusetts,* 282 U.S. 660, 669.

Plainly the amended bill does not meet the requirements that reasonably should be imposed upon the applicant. It fails to show that Alabama has any agreement with any defendant or that there is any direct issue between them or that the validity of the statutes in question and Alabama's assertion of right may not, or indeed will not, speedily and conveniently be tested by the contracting company, that apparently is directly concerned, or by a seller of such goods. Cf. *Louisiana* v. *Texas, supra,* 18, 22. There is no allegation that an adequate market for the goods in question may not be found outside the five States named. The facts alleged are not sufficient to warrant a finding that the enforcement of the statutes of any defendant would cause Alabama to suffer great loss or any serious injury. If filed, the bill would have to be dismissed for want of equity. *Florida* v. *Mellon,* 273 U.S. 12.

*Leave denied.*

Mr. Justice Stone concurs in the result.