## EVERGLADES DRAINAGE & DEVELOP-MENT CORPORATION v. FAIRBANKS, MORSE & CO. et al.

### No. 7525.

Circuit Court of Appeals, Fifth Circuit.

Feb. 16, 1935.

H. P. Adair, of Jacksonville, Fla., Jim C. Clements, of Fort Myers, Fla., and W. I. Evans and M. L. Mershon, both of Miami, Fla., for appellant.

Martin H. Long, of Jacksonville, Fla., K. I. McKay and R. W. Withers, both of Tampa, Fla., and Conrad H. Poppenhusen and Anan Raymond, both of Chicago, Ill., for appellees.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Brought in chancery in a Florida circuit court, by a bill filed March 22, 1934, the suit was for abatement of purchase price and for injunction. After a temporary injunction had been granted in it, Fairbanks, Morse & Co., the principal defendant, removed it into the federal court. There plaintiff's motion to remand was denied, and defendants' motions to dissolve the interlocutory injunction and dismiss the bill were granted. This appeal is from those orders. Testing them by an examination of the bill, we find it neither complicated nor greatly over long. Though with its exhibits it runs to nearly one hundred pages, its contents may be briefly stated. It shows that on July 14, 1933, plaintiff bought from Fairbanks for a sum certain, $225,000, payable part cash and the balance in fixed installments beginning April 1, 1934, with $50,000, claims that company had against certain drainage districts in Florida, including the South Florida Conservancy District. These claims and choses in action were the result of sales Fairbanks, Morse & Co. had made of engines, pumps, machinery, and equipment, to drainage districts under retained title or chattel mortgage contracts. Among the claims thus purchased was one against the conservancy district for $82,-724.95, for pumps, etc., sold it by Fairbanks. The contract recited that the claim was in litigation in a foreclosure suit in the federal court for the Southern District of Florida, and bound the purchaser to press the suit with reasonable dispatch to final decree. In the purchase contract it was represented that the claim was secured by a lien upon and claim against the machinery, pumps, etc., and additionally secured by a deposit with Fairbanks of bonds of the district of the face value of $100,000. As to this claim, the purchase contract recognized that the seller retained an interest in it, satisfiable by turning the machinery, etc., over to it, if and when reclaimed, or by

paying it $25,000. By allegations and by attached exhibits, the bill shows that Fairbanks expressly covenanted and represented that its contract with the conservancy district was valid and binding, that the district justly owed it on account thereof, $82,724.95, and that the bonds had been deposited with it as additional security. It alleges that plaintiff believed these representations to be true, and in making the contract relied on them, knowing nothing to the contrary. As to the payments made and to be made under the purchase contract plaintiff had with Fairbanks, the bill alleges the payment of $50,000 in cash, the agreement to pay $175,000 in four annual installments, and that to secure these payments 15,000 shares of General Motors stock had been deposited under a trust agreement, providing for maturing the whole indebtedness and selling the collateral, should any installment not be paid. Thus predicating of the purchase contract to fix plaintiff's rights, the bill proceeds to a recital of its wrongs. This consists in alleging generally that plaintiff has, since the making of the purchase contract, become and now is advised that its consideration has partly failed, for that the representation and covenant of Fairbanks that the conservancy district was indebted to it, and had deposited its bonds as collateral, was and is untrue. The bill alleges neither the time when, nor the circumstances under which, the discovery was made, nor does it undertake to explain why plaintiff, under an obligation to press the foreclosure suit, has, failing to do so, waited from July 14, 1933, when the contract was signed, until March 22, 1934, when the first payment was about due, to bring this suit or take other appropriate action. The allegation of the bill, that Fairbanks knew when it made the contract with plaintiff, that the district was contending in pleadings already filed in the foreclosure suit, that it was not indebted, emphasizes these omissions. They are made more glaring by the further allegation that Fairbanks knew, when the purchase contract with plaintiff was made, but plaintiff did not, that the district was contending, by pleadings filed in the foreclosure suit, that by reason of a letter the district had written, bearing date July 28, 1929,[1] it was not liable to Fairbanks in any sum.

Upon these allegations the pleader concludes that it ought not to be required to litigate in the Southern District of Florida, the suit between Fairbanks, Morse and the conservancy district, which in the contract of purchase it had agreed to prosecute with reasonable dispatch to a final decree. It concludes, too, that it ought not to have to pay $50,000 on April 1 following, as it had in its contract agreed to do, and that therefore an injunction ought to issue, restraining it, Fairbanks, and the conservancy district from proceeding with the suit, and restraining Fairbanks and the trustee from

[1] "Gentlemen:—In connection with contract we have this day signed with you for three 54" screw pumps, and three 180 H. P. Oil Engines, we wish to clarify the method of payment therefor inasmuch as the arrangement is unusual. A frank statement as to our understanding is as follows:—

"The lands of the District that this equipment will be used for as part of the scheme of drainage is Section or Unit 'C' as now designated in the Plan of Drainage. The Southern Sugar Company is a large owner of land in this Unit, and are very desirous of getting this land under drainage and irrigation control as rapidly as possible, and inasmuch as we are unable to find a market at this time for our bonds to go ahead with this work in regular way, the Southern Sugar Company have agreed to finance the work in this Unit so that they can plant their land in sugar cane this coming fall.

"We have been informed by them and by your Mr. Pottharst that they have made an agreement with you whereby the Southern Sugar Company will pay you 5% of the total cost of this machinery monthly until same has been fully paid. We, in turn, have agreed to deliver to them a similar amount in bonds of the District upon presentation to us of your receipts for such payments. Therefore, you are protected and our District is protected to the extent that we will deliver bonds equal in amount to the payments made to you, and you will have to look for your payments to the Southern Sugar Company, and to your guarantee from Mr. B. G. Dahlberg, as we have no funds with which to meet these payments, and in the event of the failure to meet these payments by the guarantor, you will have no recourse but to remove the machinery, or take bonds of the District for the unpaid balance.

"Our relations have been so pleasant in the past, and we desire to maintain those relations, so we want to take this method of presenting our understanding of these facts for the purpose of preventing any misunderstanding between us."

proceeding, after April 1st, to declare the whole purchase price due for nonpayment of the first installment. The prayer of the bill was that the court take jurisdiction and issue an injunction pendente lite, restraining the prosecution of the federal court suit and all proceedings to mature, collect, and realize upon the purchase money indebtedness. There was a further prayer that the court determine, upon final hearing, whether, and what amount, the district owes Fairbanks, abating accordingly the purchase money plaintiff had agreed to pay.

Appellant's position on the order refusing to remand is: (1) That its bill initiated merely a proceeding under the Florida statutes for a declaratory decree; it did not present a case or controversy within the range of federal judicial decision. (2) That in any event, its bill did not present a separable controversy between it and Fairbanks, but a single controversy between it as plaintiff, and the conservancy district and Fairbanks as defendants, the determination of whether, and what amount, the district owes. Its position on the orders dissolving the injunction and dismissing the bill as invalid, is that if the removal was proper, there is equity in the claim of its bill that until what the district owes is determined in this suit, the prosecution of the suit Fairbanks filed against the district and the payments on plaintiff's purchase money contract should be suspended and restrained.

■ We find no merit in any of these positions. Turning to plaintiff's first position on the order refusing remand, we find it unnecessary to determine whether, if plaintiff's proceeding had been brought under chapter 7857, Laws of Florida 1919, authorizing its state equity courts to grant declaratory decrees,[2] it would have been an action presenting a case or controversy within the range of federal judicial decision, either under the law as it stood before,[3] or as it stands since,[4] the enactment of the Federal Declaratory Act, 28 USCA § 400, for plaintiff's suit is not under that statute. The bill as styled and drawn is a bill for abatement of a portion of the purchase price, invoking the jurisdiction of eq-

uity, and praying for ordinary and extraordinary decrees. Such a suit presents a case or controversy fully justiciable in a federal court having jurisdiction of it. Harr v. Pioneer Corp. (C. C. A.) 65 F.(2d) 332. It was in its nature removable.

■ Its second position, that the bill states no separable controversy with Fairbanks, is no better based. It is true that the bill does contain a general declaration that there is a controversy between Fairbanks and the conservancy district as to whether and how much the district owes, and that plaintiff cannot safely pay Fairbanks until that is determined. But this is all. The only connection the district has with the suit is a hypothetical one, if it owes Fairbanks, and it was alleged that plaintiff is advised and believes that it does not, plaintiff asks that it be held bound by the decree to be rendered between it and Fairbanks. As to the district, no delict is alleged. As to it, no cause of action is asserted. No complaint is made of or against it; no allegation that it owes Fairbanks or plaintiff anything. As to Fairbanks, on the other hand, the bill presents clear and definite allegations that the consideration of its purchase has partly failed, definite and positive prayers for relief against making payments to Fairbanks at the times it agreed to make them, and for a reduction in the total ultimate payments it agreed to make by abatement of the purchase price. The suit is designed to, and if successful will operate to, relieve plaintiff of part of the obligation it assumed. It was designed to, it will, if successful, defer the time of payment and reduce the payments to be made. In the sense that it presents only one real controversy, and that between Fairbanks and the plaintiff alone, the suit presents a separable controversy. It was properly removed.

■ Nor is plaintiff's situation any better on the merits of the bill. Conclusions aside, the only matter alleged by it as defeative of the contract between Fairbanks and the district, is the district's letter of July 28, explanatory of how matters stood in regard to making payments. If, contrary to appellee's contention, we should assume that

---

[2] Sheldon v. Powell, 99 Fla. 782, 128 So. 258; Roberts v. Mosely, 100 Fla. 267, 129 So. 835.

[3] Nashville, C. & St. L. Ry. v. Wallace, 288 U. S. 249, 53 S. Ct. 345, 77 L. Ed. 730, 87 A. L. R. 1191; Alabama v. Arizona, 291 U. S. 286, 54 S. Ct. 399, 78 L. Ed. 798; Willing v. Chicago Auditorium Ass'n, 277 U. S. 274, 48 S. Ct. 507, 72 L. Ed. 880.

[4] c/f Interstate Natural Gas Co. v. Gully (D. C.) 8 F. Supp. 174.

the letter would be admissible and, if properly supported by proof of its communication to and acceptance by Fairbanks, would be an operative part of the agreement Fairbanks had with the district, we would find nothing in it to justify the relief plaintiff asks. On its face the letter does not appear to deny the validity of the contract Fairbanks had with the district. It affirms its validity. It merely states that as the district has no present money in hand with which to meet the payments, Fairbanks, if the others mentioned in the letter as guarantors did not pay it, would have either to remove the machinery or take the bonds of the district for the unpaid balance. It proposes to pay in bonds instead of in cash. This is not a repudiation; it is an affirmance of liability.

But we may not in this suit make any of these assumptions. Whether the letter is admitted, and what is its effect, is not properly to be determined here. It is in the suit pending between Fairbanks and the district, which plaintiff agreed to press with reasonable dispatch to a final decree, that this matter should be tried. It ought to have been tried there long ago. Standing under an obligation to press that suit to a speedy conclusion in its own interest and in that of Fairbanks, plaintiff may not, after this long delay, in order to obtain further time to make its payments, oust the jurisdiction already attached in that court in the foreclosure suit. Upon the plainest principles there is no equity in the bill. Simply stated, the suit comes down to this. That plaintiff has discovered, it does not say when or how, that a lawsuit which it bought may be more successfully defended than it supposed it could be when it bought it, and that because of this discovery, it is entitled to an abatement of the price, and to have performance of all of its agreements stayed pending its obtaining that. A lawsuit was bought; it is still pending with nothing done in it since it bought it, though it not only bought the right, but expressly incurred the obligation, to press it. In that suit the very issue which is sought to be brought to determination here, while payments on the contract are being stayed, can be and should have been, long ago tried out. It alleges no single fact, but only conclusions, at all pointing to any justifiable or excusable ignorance on its part, of the existence of the defenses it now seeks to take advantage of. On the contrary, it alleges that they had already been pleaded in the suit before plaintiff purchased it. It alleges nothing explaining or excusing its failure for more than seven months, to bring that suit to trial, nothing explaining why it waited until one week before the April 1st payment was due, to move at all. It alleges no single fact, but only conclusions tending to show that Fairbanks concealed or misrepresented any fact or thing in the trade. It shows merely that Fairbanks guaranteed the claims it sold, and pleads nothing which would make that guaranty less good now than it was when taken. Fairbanks' insolvency, or inability to keep its part of the contract is not even hinted at.

We think it perfectly clear that plaintiff must perform the contract as it made it; that nothing is alleged which has changed its obligations, or made them bear differently than they were agreed to be borne. Plaintiff bought a lawsuit. It must abide its purchase contract. What the result of the lawsuit may be, what plaintiff may lose or recover in it, was, when it bought it, it still is, matter for prophecy. Having agreed to buy and prosecute a suit, it must do so. If that suit fails, it will be time enough then to go on to Fairbanks for such recoupment or restitution as it may be entitled to on account of that failure.

The decree was right. It is affirmed.