**GRUENWALD v. MOIR HOTEL CO. et al.**

No. 6566.

Circuit Court of Appeals, Seventh Circuit.

May 11, 1938.

Meyer Abrams, of Chicago, Ill., for appellant.

Frederic Burnham, of Chicago, Ill., for appellee Continental Illinois Bank & Trust Co.

Claire W. Hardy, of Chicago, Ill., for appellees Warren W. Jones and others.

Homer J. Livingston and Robert P. Perkans, both of Chicago, Ill., for appellee First Nat. Bank of Chicago.

Delbert A. Clithero, Herman A. Fischer and Carlton L. Fischer, all of Chicago, Ill., for appellees Moir Hotel Co. and others.

Before MAJOR and TREANOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff appeals from a decree of the District Court dismissing his bill of complaint. The defendants include the Moir Hotel Company, a corporation, Bosmor Corporation, A. C. Allyn & Co., a corporation, Edward W. Thomas, Warren W. Jones, Perry G. Anderson, Leonard Hicks, John C. Meiners, Continental Illinois National Bank & Trust Company of Chicago, and First National Bank of Chicago. The decree complained of was entered upon motions to dismiss, interposed by the several defendants, upon the ground that the bill was multifarious and stated no cause of action. The court expressed doubt as to whether plaintiff had the right to maintain the bill for the causes of action attempted to be asserted, saying that they were largely maintainable by the corporation rather than by its creditors; that damages on account of alleged fraudulent misrepresentations could be recovered only at law, not in a representative or class equity suit, and that the suit was subject to the objections of multifariousness and misjoinder. No leave to amend was requested.

The averments of fact upon which the prayer for relief was granted are rather complicated, verbose, and difficult of clear analysis. Reduced to direct averments of fact, they are substantially as follows: On

June 1, 1928 the Moir Hotel Company, owner of the Morrison Hotel and the leasehold on which it was located, executed its 5½ per cent. bonds in the face amount of $6,000,000 secured by deed of trust, to the Continental Bank as trustee, upon the leasehold and the hotel property. The mortgagor defaulted under the trust deed in May, 1931, by failing to comply with the sinking fund requirement and on June 1, 1931, by failing to pay the semi-annual interest then maturing. The trustee took no action and the hotel continued in possession and management of the premises and paid "large" salaries to its officers and directors.

The Continental was the bank of deposit for the hotel company and had on deposit $125,000 belonging to the company. It had loaned to the depositor the sum of $150,000 and when the defaults occurred, the bank set off the funds in the deposit account against its loan and collected $12,500 from collateral it held and the balance from the hotel company.

Allyn & Co. is an investment house. It underwrote various bond issues of the hotel company and in 1928 purchased the entire amount of $6,000,000, then issued, sold the same to the public, and realized a profit thereby of $360,000. In achieving success with the sale of these bonds in 1928, the hotel company, the Allyn Company and "their officers and directors" issued certain literature from which was omitted certain information and which contained misleading information.

When the defaults by the hotel company were imminent, "the defendants devised a scheme" and caused to be organized a bondholders' protective committee of whose members, only John C. Meiners is defendant. A protective deposit agreement was prepared; the contents were not revealed to the leaseholders. The committee sent out misleading communications to the bondholders.

On June 1, 1931 the underwriting company entered into an agreement with Moir, now deceased, president of the hotel company and largely the owner of its common and preferred stock, wherein it was recited that the underwriting company was able to provide and would furnish capable hotel management; agreed that Moir deliver his stock to the underwriter and cancel his contract of employment by the hotel company and that, in event of foreclosure, the stock should be so voted and such action had as would effectively assign the equity of redemption as might be directed by the Allyn Company. The latter agreed to use its best efforts to procure the employment of Moir and not to vote the stock in favor of assignment of the equity of redemption unless the protective committee should release his guarantee of the bonds deposited with the committee. The contract was ratified by the hotel company. Defendant Hicks was employed at a salary of $15,000; Moir at the same salary; Thomas and Anderson at $500 per month each. Defendants Jones, Anderson and Thomas were elected directors. They were already directors of the Allyn Company, and Anderson was secretary of the bondholders' committee.

The hotel company paid the premiums on an insurance policy for $425,000 on the life of Moir until December 21, 1933, when, in order to avoid suits by John Griffith & Son against Moir, its directors adopted a resolution to release the rights of the company in the insurance. Moir died in December, 1934. The "bondholders" lost the insurance. Moir was never sued on his guarantee of the bonds.

The Allyn Company, with individual defendants, "confederated and conspired" against the bondholders and formed the Bosmor Corporation to operate the hotel, which company employed defendants Thomas, Anderson, and Hicks at the salaries mentioned. "Defendants passed a resolution" to reorganize the company under section 77B, Bankr.Act, 11 U.S.C.A. § 207 and note, for their own benefit and to the detriment of the bondholders, and in pursuance of such resolution the hotel company filed its petition for reorganization on June 21, 1934. Later the Allyn Company, through its vice president, Meiners, prepared a plan of reorganization and filed it with the court. The details of the plan are fully set forth.

The Continental Bank co-operated with the Allyn Company in deceiving bondholders as to the financial status of the hotel company. It failed in its duty as trustee, through its failure to advise bondholders that the Allyn Company had made a profit in selling the bonds of the hotel company and that the hotel company had paid a premium for the retirement of the outstanding bonds. It failed in its duty as trustee to supervise the expenditures for repairs while the hotel was under Allyn Company management, in permitting employment of the parties mentioned and in allow-

ing a default to occur in the payment of ground rent and taxes.

Succinctly stated, the causes of action attempted to be asserted against the Continental include the recovery of $150,000 claimed to have been wrongfully set off by the bank against the note of the hotel company; liability for default by the bank's failure as trustee to. see that the taxes were paid for three years; liability for its negligence as trustee in permitting improper management of the hotel, all concluding with a demand that the trustee be removed and a successor appointed.

■ A preference is valid, in the absence of bankruptcy, and a recovery may be had in bankruptcy only when it occurs within four months prior to the filing of the petition, while the bankrupt is insolvent. These conditions precedent do not exist. Hence this cause of action fails as a suit to recover a preference and, if maintainable at all, it is only as a fraud upon creditors. But there are no allegations, no averments of fact in this connection sufficient to constitute fraud. The bank had a right to set off its debt against the deposit. The cause of action, if any, to recover a preference was properly at law against the bank alone, and lodged in the trustee in bankruptcy.

■ The allegations against the bank as trustee are not sufficient to constitute fraud; they allege in general terms a violation of the trustee's duty, but the deed of trust is not before us and the quotations therefrom in plaintiff's bill are insufficient to disclose any such duties upon the part of the trustee as are alleged to have been violated.

■ Against the underwriting company, its officers and agents, plaintiff seeks to recover the underwriting profit of $360,000, made at the time the bonds were sold in 1931. There is no averment that this was an excessive profit; that the contract of underwriting was unfair or improper, or that any basis exists for the recovery of the money at the suit of plaintiff. The prayer that that company and its officers surrender the salaries and moneys received by the company and its officers in the operation of the hotel must fail for like reason. There is no averment that the salaries were excessive.

■ Against the First National Bank of Chicago, the averments are that the bank is a depository for the bondholders com-mittee, which it is alleged was conceived in fraud. Under the Bankruptcy Act, the bondholders' committee, the depository and its officers were all subject to the jurisdiction of the District Court in the reorganization proceedings. Section 77B, subds. (a) and (o) and subparagraph 10 of subdivision (c), 11 U.S.C.A. § 207(a), (c) (10), (o).

As to the Moir Hotel Company, Allyn, Anderson, Hicks, Jones, and Bosmor Corporation, plaintiff avers fraud in misrepresentation of fact in the sale of bonds and malfeasance of the officers in voting the stock and seeks to recover damages for the misrepresentation, and removal of the officers and directors of the corporation.

In our opinion none of these asserted causes of actions is supported by the averments of the bill. In other words, plaintiff has not set forth sufficient facts to support a judgment upon any of his alleged causes of action.

■ Irrespective of this conclusion, however, it is apparent that plaintiff has attempted to assert in one suit the following causes of action: (1) An action at law for $150,000 against the Continental Bank; (2) a cause of action in equity for maladministration by the Continental as trustee; (3) a liability of the trustee for negligence in permitting the Allyn Company to operate the hotel and in not seeing that the taxes were paid; (4) an action at law against the underwriting company to recover $360,-000, said to have been realized wrongfully in the sale of the bonds—an action clearly at law and having no connection with the alleged cause of action against the Continental Bank individually or as trustee; (5) an action at law against the underwriting company and its officers and directors to recover the moneys received in the operation of the hotel—obviously an asset of the estate, recoverable only by the trustee in bankruptcy; (6) a suit in equity against the First National Bank to remove it as depository—a cause of action, as we have seen, under the sole control of the bankruptcy court; (7) an action to remove the officers of the corporate company now in bankruptcy—clearly an action to control corporate affairs, lodged with the bankruptcy court; (8) an action in equity to recover the stock of the corporation—a cause of action which, if existing, is likewise lodged solely in the trustee in bankruptcy; (9) a suit in equity to remove the bondholders' committee for want of proper

action. Only one member of the bondholders committee is made defendant and the allegations in this respect are meager and, clearly, the jurisdiction of such an action dwells only in the bankruptcy court. Thus we have joined suits at law against various parties wholly disconnected from each other, other suits in equity against various parties wholly disconnected and suits in equity charging a general conspiracy against all defendants, supported by insufficient averments against only part of defendants.

The cause of action against the Continental Bank for $150,000 has nothing in common with the suit to recover $360,000 from Allyn Company. The suit to charge the trustee with malfeasance and to recover losses on account thereof has nothing in common with a suit against other defendants. The suit against the Moir Hotel Company and the underwriters to recover damages for fraudulent representations in the sale of bonds has nothing in common with any charge against other defendants. The demand for correction of alleged improper action by the hotel company and its officers and employees has nothing in common with those against other persons. The demand against the First National Bank of Chicago has nothing in common with those against other defendants.

Equity Rule 26, 28 U.S.C.A. following section 723, is as follows: "The plaintiff may join in one bill as many causes of action, cognizable in equity, as he may have against the defendant. But when there are more than one plaintiff, the causes of action joined must be joint, and if there be more than one defendant the liability must be one asserted against all of the material defendants, or sufficient grounds must appear for uniting the causes of action in order to promote the convenient administration of justice. If it appear that any such causes of action cannot be conveniently disposed of together, the court may order separate trials." Under this rule the Supreme Court in the case of Alabama v. Arizona, 291 U.S. 286, 54 S.Ct. 399, 401, 78 L.Ed. 798, said: "There is no test or rule of general application by which to determine whether a complaint in equity is multifarious. That question is to be decided by the court in the exercise of sound discretion having regard to the facts alleged, circumstances disclosed, and the character of the relief sought." Mr. Justice Story has said that by multifariousness

is meant improperly joining in one bill distinct and independent matters, thereby confounding them, as for example uniting in) one bill several matters perfectly distinct and unconnected against one defendant or the demand of several matters of a distinct and independent nature against several defendants in the same bill. Story, Equity Pleading, § 271. This definition has been quite generally accepted. Thus in United States v. Union Pac. R. Co., 98 U.S. 569, 25 L.Ed. 143, the court said (page 604): "It has been found convenient in the administration of justice, and promotive of that end, that parties who have no proper connection with each other shall not be compelled to litigate together in the same suit, and that matters wholly distinct from and having no relation to each other, and requiring defenses equally unconnected, shall not be alleged and determined in one suit."

Thus multifariousness arises from misjoinder of distinct demands or causes or from misjoinder of parties where the demands and liabilities are distinct and independent. Rose Mfg. Co. v. E. A. Whitehouse Mfg. Co., C.C., 193 F. 69. If any defendant is able to say that as to a large part of the transaction set out in the bill, he has no interest or connection whatever, multifariousness arises. Barcus v. Gates, 4 Cir., 89 F. 783. A bill is multifarious which seeks to enforce against different individuals, demands which are wholly disconnected. Gaines v. Chew, 2 How. 619, 11 L.Ed. 402. Various demands, in order to be united in one bill must have a common point of litigation, the decision of which will affect the whole subject matter and settle the rights of all parties to the suit. If the bill brings into the suit two separate causes of action lacking in common origin it is multifarious. City of Dothan v. First National Bank of Dothan, 5 Cir., 61 F.2d 685; Greer Investment Company v. Booth, 10 Cir., 62 F.2d 321; White v. MacQueen, 360 Ill. 236, 195 N.E. 832, 98 A.L.R. 1115; Hanna v. Brictson Manufacturing Co., 8 Cir., 62 F.2d 139.

The decree of the District Court was right because no valid cause of action was set forth in the bill of complaint and the attempted assertions of liability were such as to constitute multifariousness. Many of the causes of action attempted to be asserted do not rest in plaintiff. Of many of them the bankruptcy court alone had jurisdiction. Plaintiff might have amended his bill when the court sustained the motions to

dismiss, and by failure to do so, stood upon a pleading insufficient to justify any relief.

In view of our conclusions we have not discussed the question of jurisdiction, as to which we have a serious doubt. The decree is affirmed at the cost of plaintiff.