CARROLL, CHAS., Chief Judge.
The appellant Olin’s, Inc., was the defendant in a suit in equity for declaratory decree against whom a summary decree was entered.
This court, on an earlier hearing on a motion, ruled that the appeal was interlocutory because jurisdiction was reserved in the summary decree for later determination of certain issues. See opinion dated January 9, 1958, 100 So.2d 825.
In 1948 the Dade County Port Authority had awarded the rental car business at Miami International Airport to one Warren E. Avis, of Detroit, Michigan, for a period of five years for a consideration of 10% of the gross receipts. The contract was not exclusive in form.
Thereafter, Avis designated Olin’s, Inc., as its licensee to operate the business in Avis’ name. That was done by a printed form contract which was recorded, and on March 20, 1951, as a continuation of that agreement, an unrecorded typed additional agreement was entered into between Avis and Olin’s, Inc., reading as follows:
“Olin’s Inc., of Miami, Florida, and Warren E. Avis, of 12625 Grand River Avenue in the City of Detroit, Wayne County, Michigan, on this 20th day of March A.D. 1951, do hereby agree as follows :
“1. That the parties hereto agree to continue in effect a certain license *161 agreement presently existing between the parties hereto, which is incorporated by reference herein and made part hereof. In the event there is any conflict of the terms of this agreement and the aforesaid license agreement, then in that event the terms of this agreement shall govern and supersede any terms of said license agreement.
“2. The license agreement mentioned in Paragraph 1 above was entered into by authority of the terms of a contract Avis has with the Dade County Port Authority to operate a rental of automobiles business, without drivers, in all airports under the control of said Authority in Dade County, Florida. Said contract, which is part of the public records of Dade County, is incorporated by reference into this agreement and made part thereof, but this agreement is not intended to modify or alter any part of said airport agreement.
“3. Avis hereby appoints Olin’s as his sole and exclusive agent to operate said car rental business at all the airports operated by the Dade County Port Authority, in accordance and under the terms of the contract referred to in Paragraph 1 hereof. Olin’s shall use the name and advertising of Avis-Olin’s Rent-A-Car System. This agency agreement between Olin’s and Avis shall remain in full force and effect for the duration of Avis’ contract with aforementioned Port Authority and any and all extensions thereof.
“4. Olin’s agrees not to solicit a contract with said airport, county commission or anyone in authority in connection with said airport contract, directly or indirectly, either at this time, or at any time during the life of Avis’ contract and any extension thereof during the life of this contract, except if said airport contract should be terminated any time through the fault or through circumstances beyond the control of either party hereto.
“5. Olin’s will pay Avis 20% of their gross receipts, less 1‡ a mile, and less gasoline and oil.
“6. Olin’s will furnish Avis at least once in each month with the original copies of all rental agreements covering rentals made by Olin’s during previous monthly period, since the last report.
“7. The provisions of this agreement shall be construed under and governed by the statutes and laws of the State of Florida.
“In Witness Whereof, the parties hereto have caused this agreement to be executed by duly authorized representatives on the day and year first above mentioned.”
That arrangement with Olin’s, Inc., hereinafter referred to as Olin, amounted to a transfer to Olin of its rental car business at Miami Airport, for the duration of the Port Authority contract, for which Avis (obligated to pay the Port Authority 10% of the gross receipts) was to receive from Olin 20% of the gross receipts, “less a mile, and less gasoline and oil.”
In 1952 the Port Authority extended the Avis contract for five years, to end November 12, 1958.
With Port Authority approval, in 1955, Warren E. Avis assigned his rights in the Port Authority contract to a Delaware corporation bearing his name, and the Delaware Avis corporation then further assigned the Port Authority contract (subject to the arrangement between Warren E. Avis and Olin) to a wholly owned subsidiary, a Florida corporation designated as Avis Rental Car System of Florida, Inc. This last Avis assignee agreed to pay to the Delaware Avis corporation “all receipts from Olin’s, Inc., in excess of: (a) the amount necessary for such payment to the *162 Airport and (b) $1,000 up to a maximum of $175,000 in any agreement year.”
In August of 1957, a year and three months before the end of the contract between the Port Authority and Avis, it was announced by the Port Authority that bids for the rental car business at the Airport would be received in September (for operation after expiration of the Avis contract in November 1958).
Certain negotiations and correspondence followed, between Avis and Olin, through which Olin contended that it had received approval and permission from Avis, notwithstanding their contract to the contrary, for Olin to bid for the new Port Authority concession in its own name, for their mutual benefit. The position taken by Olin was that the parties had concluded that a concern with local background should make the application, and that if Olin obtained the new contract it would be for their mutual benefit, under which they would operate on the same basis as previously, except that Olin would pay Avis a smaller percentage of the gross, which lower rate Olin claimed had been agreed upon for the future in any event. Avis did not agree with those contentions of Olin, and insisted that an application to the Port Authority by Olin would be a breach of the contract between them, for which Avis could terminate the contract.
Olin proceeded to make application to the Port Authority for issuance of a new contract in its name. The record does not show the outcome of the Olin application. Avis then denounced such action of Olin as being a violation of their contract and gave notice to Olin of termination as of December 15, 1957.
The complaint which Avis filed for declaratory decree alleged the contracts referred to above, and the dispute which resulted from Olin’s contention that it had received permission to make application for the new Port Authority contract. The complaint further alleged that no such permission had been granted to Olin, and that Olin’s application was a breach of its contract with Avis for which such contract had been cancelled. The complaint sought a decree declaring that plaintiff’s construction of the contract was correct that Olin had breached the contract with Avis and that the contract was terminated. A prayer was included that if Olin should acquire a new contract with the Port Authority for the rental car business, Avis should have the benefit of it.
Olin did not file an answer, but responded with a motion to dismiss which included the following admission regarding the contract between Avis and Olin:
“4. There is no doubt existing as to plaintiff’s rights and status or its remedy. Plaintiff has given formal notice to the defendant of the cancellation of the contractual relationship existing between the parties to become effective December 15, 1957. Defendant does not dispute the plaintiff’s right to so act. Plaintiff’s action is premature.”
Thus Olin conceded it had breached the contract, and that the contract had been terminated.
The day after the motion to dismiss was filed the plaintiff moved for summary final decree. Before any hearing thereon, Olin’s filed a motion to transfer the cause to the law side of the court. Again Olin conceded that Avis was entitled to cancel its contract with Olin, by including the following in the motion to transfer to the law side:
“I. Exhibit ‘C’, the contract plaintiff seeks to have construed by this court herein, is clear and unambiguous; and it is apparent from the pleadings of the plaintiff that no doubt exists as to the existence or nonexistence of some right, status, immunity, power or privilege thereunder; and the validity or construction of no portion of the said contract is in question.
*163 “II. If any doubt exists as to the plaintiff’s rights under the contract between the parties (Exhibit ‘C’), it exists because of disputed questions of fact alone.
“III. That the contract between the parties (Exhibit ‘C’) has been can-celled by the plaintiff, such cancellation to become effective December 15, 1957; and the only issues involved between the parties are issues of fact, which facts should be tried by a jury.”
At that stage of the proceedings, and before answer was filed, the court entered summary final decree in favor of the plaintiff. The decree covered some eight pages, including five pages devoted to a statement of findings of fact.
In substance, the decree held, as being established, the matters that Olin had conceded as to its agreement with Avis, namely, that plaintiff’s construction of the contract was correct (which was not disputed by Olin) ; that Olin’s action in applying to the Port Authority for a new concession in its name breached its contract with Avis (which Olin conceded), and that because of such violation of a term of the contract between them, Avis had effectively terminated its contract as of December 15, 1957, (which fact also Olin had conceded on the record).
The decree reserved jurisdiction for later determination of issues raised under paragraphs six and seven of the complaint. Paragraph six dealt with the taking over of certain automobiles from Olin, and paragraph seven presented plaintiff’s claim of a right to the benefit of Olin’s new contract, if Olin should obtain one from the Port Authority.
Olin filed four assignments of error. The basis of the first and fourth assignments is the contention that there were no controversies or doubts involved to invoke the procedure for declaratory decree. The second assignment charged error in granting a summary decree before answer. The third assignment concerned failure of the court to grant the motion to transfer the cause to the law side.
The assignment under which appellant contended that it was error for the court to entertain and rule on the plaintiff’s motion for summary decree before the answer was filed, we hold is without merit. Rule 1.36 of 1954 Florida Rules of Civil Procedure, 30 F.S.A., and the corresponding Rule 56 of Federal Rules of Civil Procedure, 28 U.S.C.A., expressly provide that a plaintiff may move for summary judgment “at any time after the expiration of 20 days from the commencement of the action.” Prior to 1946, Federal Rule 56 had permitted such a motion only after the “pleading in answer thereto has been served.” See Peoples Bank v. Federal Reserve Bank of San Francisco, D.C.Cal.1944, 58 F.Supp. 25; United States v. William S. Gray & Co., D.C.N.Y.1945, 59 F.Supp. 665. However, the Federal rule was amended in 1946 to permit a plaintiff to move for summary judgment after 20 days from commencement of the action. Security Trust Co. of Rochester, New York v. Woodward, D.C.N.Y.1947, 73 F.Supp. 667, 671; and see Federal Advisory Committee Comment on Amended Rule 56, in 30 F.S.A. at p. 760.
The assignments of error contending that there were no doubts involved to invoke the procedure for declaratory decree are well taken.
From an examination of the contract and the pleadings it appears that provisions of the contract were clear and not in doubt or disagreement. The dispute set out in the complaint concerned whether the defendant by its actions was guilty of a breach of the contract. The question of whether the defendant had breached the contract, depending as it did on disputed questions of fact, did not make available the provisions of the Declaratory Judgments Act, Section 87.01 et seq., Fla.Stat., F.S.A. Halpert v. Oleksy, Fla.1953, 65 So.2d *164 762; Barrett v. Pickard, Fla.1956, 85 So.2d 630.
The factual disputes as to whether defendant had breached the contract, and as to whether plaintiff had terminated the contract, which were set .out in the complaint, were dispelled by defendant’s admissions.
The defendant’s pleadings, as well as the contract and the complaint, were required to be taken into consideration in order to determine whether there were any doubts asserted as to the terms or provisions of the contract, arising from doubtful meanings, uncertainties or ambiguities in the contract. See Halpert v. Oleksy, supra, and Barrett v. Pickard, supra.
The admissions by defendant, in the motion to dismiss and motion to transfer to the law side, that defendant had breached the contract, and that plaintiff had terminated the contract, removed those questions from controversy, leaving nothing but questions as to the effect of the breach of contract.
Halpert v. Oleksy, supra, Fla.1953, 65 So.2d 762, was a suit for declaratory decree to “construe” the terms of a lease and determine the rights of the parties thereunder with reference to a security deposit, after the leased property had been destroyed by fire. In that case there were no doubts asserted by the parties as to the lease contract, and the absence of such doubts was made to appear from admissions of the defendant in a motion to transfer to the law side. The disputes in that case, as here, were claims of breach of the contract by the parties. It was held that the motion to transfer to the law side should have been granted.
In dealing with those questions in the Halpert case, the Supreme Court said (65 So.2d at page 763) :
“There was no question raised of the lessees’ right to a return of the deposit put up by them under the terms of the lease, except and because of damages claimed by each of the parties because of alleged breaches of various terms of the lease. The cancellation of the lease was admitted by both parties. The motion to transfer the cause to-the law side of the Court contained the following:
“ T. That it appears from the complaint of the Plaintiffs herein and the Answer of the Defendants herein that the possession of the premises involved in this litigation is in the Defendants herein as an accomplished fact and that the lease between the parties has been cancelled between them by stipulation and agreement, and that the only issues involved between the parties are issues of fact involving the respective damages suffered by the parties, which facts should be tried by a jury;
“ ‘2. That it appears from the Bill of Complaint filed in this cause that the only relief sought by the Plaintiffs is a money judgment against the Defendants and that the relief sought by the Defendants is for a money judgment for damages against the Plaintiffs;’
“Whether or not there was any ‘doubt as to [their] rights under the lease’ is to be determined from the pleadings and the written lease. In the answer to the counterclaim the respondents ‘admit that all provisions of the lease are well defined.’
“From our examination of the pleadings and the lease we fail to find any doubt asserted by either party as to the terms or meaning of any provision of the lease. F.S. § 87.02, F.S.A., provides that when any person interested, or who may be in doubt as to his rights under any legal instrument in writing ‘may have determined any question of construction or *165 validity arising under such * * * instrument in writing *■ * * and obtain a declaration of rights, status or other equitable or legal relations thereunder.’ No ‘doubt’ of the meaning of any provision of the lease was alleged or asserted and we fail to find any provision in the lease which is doubtful in meaning, uncertain or ambiguous. There was no question of construction of any term of the written lease for the Circuit Court to determine. Doubt, because of disputed questions of fact alone, is not sufficient, especially when the only relief sought is damages.”
In the Halpert case, after ruling out jurisdiction under the declaratory judgment statute, there remained to be determined (1) questions of fact as to whether there was a breach of contract, and (2) the amount of damages recoverable for any breach. In the instant case the first of such questions was eliminated when defendant Olin in its motions admitted a breach of the contract. The second question was present, but in a different form. Damages were not sought in the complaint (and the summary decree made provision for none), but the suit presented a claim for equitable relief, to which the plaintiff Avis contended it would be entitled against defendant Olin, if Olin should receive a new contract for the rental car business on the application made by Olin to the Port Authority while the Avis-Olin contract was in effect.
For the reasons pointed out herein, and as shown and held in Halpert v. Oleksy, supra, the case which the chancellor heard and determined did not justify exercise of jurisdiction under Chapter 87, Fla.Stat., F.S.A. The admissions of defendant in its pleadings left the court nothing to try, except the question of disposition of a new Port Authority contract, if Olin should obtain one on its application made before Avis terminated their contract, and as to which the trial court reserved jurisdiction. See also Columbia Casualty Co. v. Zimmerman, Fla.1953, 62 So.2d 338; and Dade County v. Rauzin, Fla.1955, 81 So.2d 508.
The summary decree is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion, including those for which jurisdiction was reserved.
Reversed and remanded.
HORTON and PEARSON, JJ., concur.