STURGIS, Chief Judge
(dissenting).
This interlocutory appeal is to review an order denying motion of the defendant, former wife of the plaintiff, to dismiss the complaint in a proceeding based on Chapter 87, Florida Statutes, commonly known as the Declaratory Decree Act. The complaint charges:
“1. Each of the parties hereto is over the age of twenty-one (21) years and the defendant is a resident of Duval County, Florida.
“2. The parties hereto were married each to the other on September 9, 1915, and thereafter lived together until about August of 1945, at which time they separated and since said time have lived separate and apart. On October 30, 1945, the defendant herein filed a Bill of Complaint for separate maintenance or for alimony unconnected with divorce and this Court on January 18, 1946, entered an Order granting such alimony to the defendant.
“3. Following the marriage of the parties hereto and beginning about 1921, they acquired certain land on the Old Orange Park Road in Duval Coun *908 ty, Florida, and on said land established a dairy known as Bartholf’s Dairy. From said time until about 1937, both parties worked long and hard in the operation and management of the dairy and operated said dairy as a family enterprise.
“4. About 1937 the plaintiff herein became ill and as a result thereof was not able to participate in the operation of said dairy or in the management thereof. For a period of several years the operation and management of the dairy was in the exclusive control of the defendant herein and as a result of her efforts the dairy was successfully operated and a substantial amount of the indebtedness thereof was paid off.
“5. During such period the defendant herein sold certain property which was a part of her separate estate and invested the proceeds thereof in said dairy.
“6. Although the land hereinabove mentioned was taken in the name of the plaintiff only, the defendant by her efforts hereinabove alleged and by the investment of her own separate funds, acquired a substantial equitable interest in said property and the parties hereto were in equity the joint owners thereof.
“7. Sometime prior to April, 1954, the parties hereto agreed to join in a sale of their respective interest in a portion of the land referred to above, agreed that each owned a one-half interest therein or in the proceeds thereof, and further agreed that each party would account for, make return of and pay such federal capital gains taxes as would be due on the gain realized by each party by the receipt of his or her share of the proceeds or said sale.
“8. On or about April 15, 1954, the parties hereto entered into an agreement to' sell certain portions of said ’.land and executed and delivered a contract for such purpose, which contract provides that after certain payments in cash were made, the balance due would be evidenced by two notes, one payable to J. F. Bartholf and the other payable to Gladys S. Bartholf, and provided further that certain mortgages on said land would be paid out of the amount due to the plaintiff. A true copy of such contract is attached to the Complaint filed herein. Thereafter, upon the sale thereof, the defendant received one-half of the cash paid for said land and a note for one-half of the balance due thereon.
“9. Thereafter the legal title to certain other portions of said land was conveyed by the plaintiff to the defendant and in consideration thereof and of the receipt by her of her one-half interest in the gross proceeds of said sale, free and clear of the mortgage or mortgages thereon, the defendant executed and delivered to the plaintiff a Release discharging him from further liability for alimony and other obligations, a true copy of which is attached to' the Complaint filed herein.
“10. The plaintiff has accounted for, made return of and paid all federal capital gains taxes owed by him by reason of his receipt of his share of the proceeds of said sale; but the defendant, notwithstanding her agreement, has failed to account for, make return of and pay such taxes upon her share of said proceeds.
“11. The plaintiff herein believes and alleges that the defendant, by reason of her work and efforts over many years in the operation and management of the family business and by the investment of separate funds therein, was in equity the owner of a one-half undivided interest in said land, the agreements and sale above mentioned was a partition between the parties and that the capital gain resulting to the defendant upon the receipt by her of her *909 share was a gain upon the sale of her property.
“12. By reason of the failure of the defendant to account for, make return of and pay the federal capital gains taxes due on the share received by her, the Federal Internal Revenue Service has made an assessment against her in the sum of approximately $28,000.00 on the ground that the gain received by her upon the receipt by her of her share is a capital gain resulting from the sale of her property. Notwithstanding the assessment made against the defendant, the Federal Internal Revenue Service has made a like assessment against the plaintiff upon the ground that the gain realized by both parties was a capital gain to the plaintiff, thereby leaving it to the parties to settle between themselves the true state of the ownership of the land and property rights of each therein.
“13. Until a determination shall be made of the rights, interest and ownership of the parties in said land, neither the Internal Revenue Service nor the parties can determine which party is liable for the said taxes although, pending such determination, interest and penalties are accruing to the damage of such party as shall be found liable.
“14. The plaintiff herein is in doubt as to his rights, liabilities and status under the agreements, sale and other matters hereinabove thereof save in this proceeding.”
The contract referred to in paragraph 8, supra, contains the following pertinent provisions :
“(c) The balance [of the purchase price] to be paid on or before two (2) years from date and to be evidenced by two (2) separate notes, both of which are secured by one (1) Purchase Money Mortgage, with one note being payable to the Seller, J. F. Bartholf, or to whatever person or corporation he shall designate and the other note being payable to the Seller, Gladys S. Bartholf, or her nominees, both notes bearing interest at the rate of five percent (5%) per annum from date. It is understood that the note payable to Gladys S. Bartholf shall represent one-half of the balance of the purchase price due and shall in no way be affected by any of the provisions set forth in Paragraph (f) below, with reference to mortgages now existing on said property.”
í{í i{i # %
“(f) It is further understood that at the present time there are thought to be two mortgages outstanding against said property, one held by the Estate of Max Witten which is to be satisfied from that portion of the cash payment made at the time of closing, due to the Seller, J. F. Bartholf, and the other held by Joe Witten and others, as security for a supersedeas bond executed to allow the Seller, J. F. Bartholf to appeal ■from a judgment entered against him in the Circuit Court of Duval County, Florida. The Buyer agrees, at no expense to the Sellers, to make arrangements for becoming surety on said supersedeas bond in place of Joe Wit-ten and his associates, so that the said mortgage can be satisfied. Any cash necessary to take care of said judgment will be held by the Buyer in escrow until the said judgment is vacated or paid. However, Buyers will not hold in escrow for that purpose from the share of the cash payment of the Seller, J. F. Bartholf, more than $12,-000.00.”
* * * * * *
“10. It is understood that the Seller, J. F. Bartholf, shall have the right to remove from the premises all of the improvements thereon, with the exception of the Office or Administration Building. These improvements are to be removed no later than July 1, 1954.”
*910 The release referred to in paragraph 9, supra, reads:
“Know All Men By These Presents, That Gladys S. Bartholf, for and in consideration of the deeding to her of that certain property located at 3834 Blanding Boulevard, Jacksonville, Florida, by her husband, J. Frank Bartholf, and in consideration of the receipt of one-half of the purchase price of land known as Bartholf Dairy, has released and forever discharged, and by these presents does release and forever discharge the said J. Frank Bartholf of and from any responsibility for alimony, support money, separate maintenance money, or any other type of obligation, and specifically it is understood that the said J. Frank Bartholf is released from the responsibility of paying any moneys for her maintenance, and it is agreed that he has paid her since the time of their separation the sum of One Hundred Twenty-Five ($125.00) Dollars per month up to the time of the execution of this instrument.
“It is understood that one-half of the purchase price of said land known as Bartholf Dairy . mentioned above represents one-half of the total sale price of certain lands formerly owned by J. Frank Bartholf upon which zvas situate his place of business known as Bartholf Dairy.” (Emphasis supplied,)
Section 87.01, Florida Statutes, F.S.A., authorizes the circuit courts to render declaratory decrees, judgments or orders as to the existence or nonexistence:
“(1) Of any immunity, power, privilege or right; or
“(2) Of any fact upon which the existence or nonexistence of such immunity, power, privilege or right does or may depend, whether such immunity, power, privilege or right now exists or will arise in the future.”
Section 87.02, Florida Statutes, F.S.A., provides :
“Any person claiming to be interested or who may be in doubt as to his rights under a deed, will, contract or other article, memorandum or instrument in writing or whose rights, status or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum or instrument in writing, or any part thereof, and obtain a declaration of rights, status or other equitable or legal relations thereunder.”
The primary ground of the motion to dismiss is to the effect that the complaint “fails to state a cause of action.” Other grounds are addressed to particulars in which the complaint is said to be insufficient. The test is not whether the complaint shows that plaintiff will succeed in getting a decree in accordance with his theory and contentions, but whether he is entitled to a declaration of rights at all. Rosenhouse v. 1950 Spring Term Grand Jury, etc., Fla., 56 So.2d 445.
The order denying the motion recites that a decision declaring the right, title or ownership which each of the parties had in the property at the time of sale “should be binding upon the United States Government in its determination of the respective liabilities of the parties hereto for the Federal capital gains taxes * * * and to that end relieve one of the parties hereto from subsequent harassment and expense in settling the issue * * *.”
'While it may be correct that such a decision “should be binding” upon the federal government, it is elemental that it is not, that it can be nothing more than persuasive *911 to the federal authorities who, on principles of comity, usually apply the state law in determining the ownership of property subject to taxation. That type of recognition, however, is so “iffy” in character as to drain such decisions of the essential attributes of finality which the Declaratory Decree Act envisions and is designed to accomplish. It is clear then, at the outset, that the state court is powerless to establish, for the federal purposes sought by plaintiff, the existence or nonexistence of any immunity, power, privilege, or right, or of any fact upon which the existence thereof does or may depend, either at this time or in the future, as is requisite to the relief contemplated by F.S. Section 87.01, F.S.A., supra.
The complaint herein does not seek a declaratory decree determining the defendant wife’s rights as the alleged former joint owner of the subject lands. That question is rendered moot by the mentioned release executed by her to the plaintiff husband. Neither does the complaint seek to alter the present relation of plaintiff and defendant under the order entered in the independent suit of the defendant for separate maintenance and alimony unconnected with divorce, or to determine any present rights flowing out of the marital relation, or to advise them as to the future effects of their dealings with each other. Its only possible purpose is to provide plaintiff with a judicial blessing by the state court of the defense which plaintiff is making or intends to make before the federal authority against the tax assessment levied by the Federal Internal Revenue Service, which is not a party to this suit. To entertain the complaint herein on the basis of F.S. Section 87.01, F.S.A., would not only fail to provide an effective remedy but would subject the defendant to the expense and harassment of this inconclusive action without protecting her against similar expense and harassment in such proceeding as may be in order before the federal agency or court upon the question of the imposition of and liability for payment of the federal tax. The complaint inaccurately alleges that by making an assessment of the full amount of the tax against both plaintiff and defendant the federal authority has left it to the parties to settle between themselves the state , of the ownership of the land. This circumstance actually leaves it to the parties to settle with the federal government the question of liability for the tax.
Assuming as we must that the federal government will continue to. recognize the state law as the fountain from which to determine the question of ownership of the subject property, it would be governed by the same principles that in a proper proceeding would control a decision of the; state court upon the same subj ect. The law abhors useless and inconclusive procedures. Since a decree of the state court in the instant case cannot have the effect intended by F.S. Section 87.01, F.S.A., that section should not be relied on as a basis for the proposed decree. The right to relief, if any, must be founded on F.S. Section 87.02, F.S. A.
The provisions of F.S. Section 87.02, F. S.A., are such that relief thereunder can be activated only by one who is “in doubt” as to his rights under written. documents' of the character mentioned therein. It has been repeatedly held that the statute is not activated unless a bona fide doubt exists and that it is only then that the liberal administration and construction of the act is to follow. Dade County v. Rauzin, Fla., 81 So.2d 508; Halpert v. Oleksy, Fla., 65 So.2d 762; Columbia Casualty Co. v. Zimmerman, Fla., 62 So.2d 338; Roberts v. Jenkins, Fla., 59 So.2d 633; Coral Gates Properties v. Hodes, Fla., 59 So.2d 630.
The Declaratory Decree Act does not authorize its use as a substitute for other normally appropriate action. Florida Hotel and Restaurant Commission v. Marseilles Hotel Co., Fla., 84 So.2d 567; Stark v. Marshall, Fla., 67 So.2d 235; Bowden v. Seaboard Air Line R. Co., Fla., 47 So.2d 786. It is not available to prove the terms of a disputed oral contract. Coral Gates *912 Properties v. Hodes and Roberts v. Jenkins, supra. It is not available where the real question -presented is whether a clear and unambiguous contract has been breached. Olin’s, Inc., v. Avis Rental Car System of Florida, Fla.App., 102 So.2d 159; Barrett v. Pickard, Fla., 85 So.2d 630.
The oral agreement set forth in paragraph 7 of the complaint is clear and complete. It admits no- basis for doubt as to its terms, purpose or effect. If the parties made an agreement, as plaintiff alleges, recognizing that each owned a one-half interest in the property sold to Wood, and further agreed that “each party would account for, make return of and pay such federal capital gains taxes as would be due on the gain realized by each party by the receipt of his or her share of the proceeds” of said sale, it would be trite to enter a declaratory decree to the effect that the contracting parties are bound thereby. The remedy for breach of such an agreement is, of course, a common law action with right to trial by jury. That constitutional right would be denied by resort to the statutory procedure employed herein.
Upon careful examination of the complaint it will be seen that the only subject as to which plaintiff entertains any doubt whatsoever is whether he will be able to establish to the satisfaction of the court the truth of the alleged services and contributions of the defendant wife toward the acquisition of the subject property, title to which was taken in plaintiff’s name. Plaintiff thus assumes, as a matter of law, that if he maintains that burden, equity will compel the defendant wife to accept the status and attending liabilities and obligations of joint ownership as charged by paragraphs 6 and 11 of the complaint, this proposition being independent of and unaffected by the alleged oral agreement as charged in paragraph 7 of the complaint. It is well settled that a court of equity may upon the claim of a wife recognize and enforce equitable interests in the husband’s property as a result of services rendered and advancements made thereon or in connection therewith. Carlton v. Carlton, 78 Fla. 252, 83 So. 87; Engebretsen v. Engebretsen, 151 Fla. 372, 11 So.2d 322. But we find no authority for the proposition that a wife, by the naked fact of having rendered services and made contributions toward the acquisition of the separate property of her husband, can be compelled against her will to accept the liabilities and obligations of joint ownership in such property. Incalculable mischief would result in the handling of property and business affairs of married persons, as well as in the settlement of their estates, if such a doctrine were established as an incident to the marital relation. The thought that a wife may not make such obligations to her husband’s welfare, as well as her own, without incurring such dire consequences as plaintiff contends for is revolting to me and I will have no part of it.
Appellee cites May v. Holley, Fla., 59 So.2d 636, 639, in which the Supreme Court, speaking through Taylor, Associate Justice, stated the basic -proposition that under the subject act the circuit courts are vested with a broad scope of jurisdiction that is subject only to the constitutional limitations upon the functions of the judicial department of government. However, it was pointed out in that case that before any proceeding for declaratory relief should be entertained it should be made to appear, inter alia, that there is a practical need for the declaration, that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts, that the antagonistic and adverse interests are all before the court by proper process or class representation, and that the relief sought is not merely the giving of legal advice by the courts. And it was pertinently observed that “the court should never lose sight of the right to jury trials in those cases not strictly equitable in nature.”
As said by Mr. Justice Brown, concurring, in Ready v. Safeway Rock Co., 157 Fla. 27, 24 So.2d 808, 812:
*913 “Nor should it [the declaratory decree statute] be so broadly construed as to make it a procedural juggernaut which would ride down and crush out other valuable well defined and time-proven equitable and statutory remedies.”
In summary, I am persuaded that:
(1) This proceeding for a declaratory decree could be effective under the provisions of F.S. Section 87.01, F.S.A., only if the federal tax authority were made a party to it and could be bound thereby, neither of which circumstances is present.
(2) The question of the existence of the alleged oral agreement and a breach thereof cannot be resolved by a declaratory decree.
(3) There being no bona fide doubt as to the terms, conditions, and effect of the written instruments in suit, a declaratory decree defining rights thereunder is not available under F.S. Section 87.02, F.S.A.
(4) The agreement for the sale of the land was full and complete without any reference to the totally unrelated subject of who, as between plaintiff and defendant, was to pay the federal capital gains tax thereon.
(5) The courts are powerless to impose on a wife, without any claim of right on her part and against her will, an equitable interest in lands the legal title and ownership of which became and remained vested in her husband, and is powerless to impose on her the liabilities and obligations of such ownership where such action is based on the fact that she rendered valuable services and made substantial contributions in aide of the acquisition thereof by her husband.
(6) The effect of this decision is to revolutionize the recognized practice and procedure under the Declaratory Decree Act and circumvents the constitutional right of the litigants to trial by jury.
Aside from the fact that the decision is in direct conflict with the decisions of the Supreme Court of Florida and of another District Court of Appeal, so that in my opinion certiorari to the Supreme Court should lie, I feel that the decision is of such great public importance, especially in the aspect of its effect upon property rights, that this court should certify it to the Supreme Court of Florida for review as authorized by Article V, Sec. 4(2), Constitution of Florida, F.S.A.
For the reasons stated I would reverse the order denying the motion to dismiss.