**ROBERT W. READY** v. **SAFEWAY ROCK COMPANY**, a Florida Corporation.

24 So. (2nd) 808                             January Term, 1946
February 1, 1946                                       En Banc

*Thos. W. Bryant* and *E. Snow Martin,* for appellant.

*McKay, Macfarlane, Jackson & Ferguson,* and *Calvin Johnson,* for appellee.

TERRELL, J.:

In December 1938, C. H. Morton executed a ten year lease to Safeway Rock Company, a Florida Corporation, with option to renew for a like period. In July 1944, Robert W. Ready purchased the lands covered by the lease, including an assignment of Morton's interest in the lease. The lease provided that within ninety days Safeway Rock Company, erect "a plant and equipment of capacity sufficient to produce five hundred tons of crushed rock per day from the leased lands."

In May 1945, appellant, Robert W. Ready filed his second amended bill of complaint in the circuit court, praying for a decree adjudicating the rights of complaint under the lease, requiring that defendant cease violating its terms and imposing a penalty therefor. A motion to dismiss the bill of complaint was granted and this appeal was prosecuted.

The question presented is whether or not the facts stated are such as to authorize a declaratory decree adjudicating the "rights, status, and other equitable or legal relations" of complainant under the lease.

The bill of complaint was filed pursuant to chapter 21820, Acts of 1943, Chapter 87, Florida Statutes annotated, sometimes known as the Uniform Declaratory Judgments Act. This act enlarges the scope of substantive and remedial remedies over its predecessor, Chapter 62.09, Florida Statutes 1941. It clothes the circuit courts with original jurisdiction to "declare rights, status and other equitable or legal relations whether or not further relief is or could be claimed or prayed." The declaration of the circuit court may be affirmative or negative and shall have the effect of a final decree, order, or judgment.

It also authorizes the circuit courts to enter declaratory decrees or judgments as to the existence or non-existence of (a) "any immunity, power, privilege or right," or (b) "any fact upon which the existence or non-existence of such immunity, power, privilege or right now exists or will arise in the future." The bill of complaint may also pray for "additional, alternative, coercive, subsequent or supplemental relief in the same action."

Section two provides that any person claiming an interest in or who may be in doubt as to his rights under a deed, will, contract or other instrument in writing or whose rights, status, equitable or legal relations are affected by a statute, or regulation made under statutory authority, or by a municipal ordinance, contract, deed, will, franchise or other instrument in writing may have determined any question of construction or validity arising under any instrument so named or any part thereof and secure a declaration of rights, status or other legal or equitable relations thereunder. Contracts may be construed before or after breach.

Section four provides appropriate and similar relief as to any person interested as or through an executor, administrator trustee, guardian, or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trustent, in the administration of a trust, or of the estate of a decedent, an infant, lunatic or insolvent and section eleven declares the purpose of the act to be "to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations." In summary the act provides for a statement of ones rights, status, equitable or legal relations, when they are in doubt and when such statement is in the affirmative appropriate relief may be prayed for and granted. If judiciously employed the act will go far to extricate the matter of determining rights and affecting remedies from the web of proceedural dialectic into which they often become involved. Through it one may be advised of his status and have the way cleared for relief if he is entitled to any.

The act in effect prior to the present act was chaper 7857, Acts of 1919, Section 62.09, Florida Statutes of 1941. It was

limited in scope and provided merely that any one interested under a deed, will, contract in writing or other instrument in writing may file a bill in equity for the determination of any question of construction arising under the instrument, and for a declaration of rights of the person interested. That act was construed in Sheldon v. Powell, 99, Fla. 782, 128 So. 258. What we then said applies in the main to the present act except that there are phases of the present act that were not involved in that case. The circuit courts are not only clothed with jurisdiction to hear and enter declaratory decrees as required by the act, but they are also clothed with discretion to determine whether or not the moving party states a case sufficient to motivate jurisdiction as measured by the test defined in this opinion.

The Federal Declaratory Judgments Act and some of the state acts require that any declaratory decree be based on an actual controversy, but the act in question does not so require. The test to activate jurisdiction under the instant act is whether or not the moving party shows that he is in doubt as to the existence or non-existence of some right, status, immunity, power or privilege that he is entitled to have such doubt removed and if shown to be existent, seek such relief as the circumstances warrant. He may pray for "additional, alternative, coercive, subsequent or supplemental relief."

Viewed in its proper perspective, the declaratory judgments act is nothing more than a legislative attempt to extend procedural remedies to comprehend relief in cases where technical or social advances have tended to obscure or place in doubt ones rights, immunities, status or privileges. It should be construed with this objective in view but it should not be permitted to foster frivolous or useless litigation to answer abstract questions, to satisfy idle curiosity, go on a fishing expedition or to give judgments that serve no useful purpose. It should be construed to aid those who have a meritorious cause rather than to provide a way of escape for those who would be adversely affected. There is no reason whatever why the highway to justice should be strewn with hurdles and pitfalls that make one who secures it wonder if the "game is worth the candle."

The original bill of complaint prayed for cancellation of the lease. The second amended bill prayed for a declaration of the rights of complainant under the lease. The record shows that the purpose of the lease was to mine phosphate rock. It required the erection within ninety days of a plant with the capacity of five hundred tons of crushed rock per day. It also provided for a minimum rental of $100.00 per month to the lessor should the royalties of five cents per ton not exceed that amount. It is shown that such rental was paid and accepted for more than six years by appellants predecessor in title. It is shown that a plant of some capacity was constructed, but there is no provision in the lease for penalty or forfeiture in the event of failure to build a plant of the specifications required in the lease.

Under the allegations in the bill of complaint and the facts as detailed, it results that the sole ground on which complainant seeks a declaration as to his alleged rights is whether or not he is entitled to a decree requiring appellee to enlarge the capacity of its plant to produce five hundred tons of crushed rock per day and to impose a penalty for failure to do so. The chancellor did not think that in equity the showing made warranted such a decree.

The law is well settled in this country that courts of equity will not declare a forfeiture where there is no provision in the instrument for one. 35 Corpus Juris. 1065, Section 235 and cases cited thereunder. The instant lease did not provide for a forfeiture and so far as any damages are alleged it is not shown that the plant constructed was not ample or that damages resulted because it was not of specification named in the lease. The original lessor raised no question about this, but accepted the rentals on the lease at contract price for more than six years. Appellant purchased with knowledge of this, and it appears that the rental provided in the lease was offered him, he is not shown to have been damaged in any way.

Under this state of facts there is no right, immunity or privilege existent or non-existent that appellant is shown to be in doubt about or that would be efficacious if removed, and since he and his predecessor in title have received everything

in the way of rents, the lease guarantees and the lease imposes no penalty for not building a plant of the size specified and no damage is shown or alleged for not doing so the test required was not met and being so the chancellor should not be held in error for dismissing the bill of complaint.

Affirmed.

CHAPMAN, C. J., BUFORD, THOMAS, ADAMS and SEBRING, JJ., concur.

BROWN, J., concurs specially.

BROWN, J., concurring specially:

I concur with Mr. Justice TERRELL that the decree of the court below in this case should be affirmed, and I also concur in what he had to say in his opinion with reference to the general purposes of Chapter 21820, Acts of 1943, which Act enlarges the scope of its predecessor Chapter 7857, Acts of 1919 (62.09 F. S. 1941).

But I must say that when, soon after its enactment, I first read Chapter 21820, Acts of 1943, I was impressed with the apparently almost unlimited scope of the act, and was reminded of the words of one of Shakespeare's characters who said: "Give me a charter as wide as the wind, to blow on whom I please." However, upon further study of the statute I became convinced of its usefulness if properly construed; that is, if it is so construed as not to conflict with constitutional principles.

We must not forget that Article II of our constitution divides the powers of the State of Florida into three grand divisions, the legislative, the executive and the judicial departments. And both our national and State constitutions guarantee that no person shall be deprived of his life, liberty or property but by due process of law, which latter term embraces of course due notice and an opportunity to be heard.

The power vested in the courts by Article V of the constitution is *judicial* power. In Section 11 of Article V the Circuit Courts are given exclusive jurisdiction in all cases at law and in equity, not cognizable by inferior courts, and "of such other matters as the legislature may provide." But, as was said by Mr. Justice ELLIS in Barnett v. Green, 97 Fla.

1007, 122 So. 570, 69 A.L.R. 244, "such other matters must be justiciable; that is, such matters as are capable of being adjudicated by the judicial power." And he added that: "The judicial power of the State extends to all controversies justiciable in their nature."

In 16 Am. Jur. page 282, it is said:

"Sec. 9.   Real Controversy as Prerequisite.—It is well settled that a proceeding for a declaratory judgment must be based upon an actual controversy. The Federal Declaratory Judgments Act and some of the state acts so provide; but even in the absence of any express provision to this effect, a similar limitation is generally implied and observed by the courts both in America and in England.   No proceeding lies under the declaratory judgment acts to obtain a judgment which is merely advisory or which merely answers a moot or abstract question.

"Sec. 10.—What Constitutes a Controversy. — The term 'actual controversy' has been given a broad construction by the English courts.   Generally speaking, a controversy which will justify a court in entertaining a suit under a declaratory judgment must be something more than a mere difference of opinion or a mere theoretical question.   It must be justiciable, and this implies a state of facts involving persons adversely interested in matters in respect of which a declaration is sought.   Moreover, the interest of the parties arising out of their relationship to each other and to the subject matter of the controversy must be more than merely general.   It must be a substantial present interest in the relief sought and such that the judgment or decree will operate as res judicata as to them and be of practical help in terminating the controversy. On the other hand, it is clear that to constitute an actual controversy so as to render these acts applicable, there need not exist an actual right of action on one party against the other in which consequential relief might be granted.

"In a number of cases it has been held and in others intimated that the appearance of 'ripening seeds of a controversy' is sufficient.   Within this rule the 'ripening seeds of a controversy' appear where the claims of the several parties in interest are present and indicative of threatened litigation in

the immediate future which seems unavoidable, even though the differences between such parties as to their legal rights have not yet reached the stage of an 'actual controversy', which involves the active pressing of the claim on the one side and active opposition thereto on the other. The rule has been laid down broadly that a claim of a legal or equitable right on the one hand and its denial on behalf of an adverse interest constitute a case for proceeding for a declaratory judgment. Numerous examples of particular sets of facts which have been held to be, or not to be, such a controversy as will sustain a proceeding for a declaratory judgment will be found in later sections of this article."

The constitution of Florida only gives to the Governor of the State the right to request advisory opinions from the Justices of this court, and that right is limited to questions arising as to his powers and duties under the constitution. The differences between a declaratory judgment and a purely advisory opinion is, that the former is a binding adjudication of the rights of the parties, even when unaccompanied by the issuance of process to enforce such rights.

We may be sure that it was not the intention of the legislature, in adopting our present declaratory judgment act, to authorize or require the judiciary to give free legal advice to any party requesting it, nor to practice law without a license. In Denver v. Lynch, 92 Colo. 102, 18 Pac. (2nd) 907, 86 A. L. R. 907, it was held that the Colorado declaratory judgments act was not intended to repeal the statute prohibiting judges from giving legal advice, or to impose the duties of the legal profession upon the courts, or to settle mere academic questions.

In the case of Sheldon v. Powell, 99 Fla. 782, 128 So. 258, Mr. Justice TERRELL wrote an able opinion construing the general scope and purpose of our first declaratory judgments act, in which he pointed out its advantages and also some of its limitations. The scope of that act was narrower than that of the present act, but much that was said in that opinion is applicable to a proper construction of the present act. The opinion in Sheldon v. Powell was quoted with approval by Mr. Justice SEBRING in the recent case of Sample v. Ward, 156

Fla. 210, 23 So. (2nd) 81. In that opinion, it was said: (referring to section 62.09 F.S. 1942.)

"Under this section of the statute it is not necessary that there be an 'actual controversy' before an equity court may take jurisdiction of a suit to construe a deed, will, contract in writing, or other instrument in writing, and declare the rights of persons interested thereunder. If the question raised in such suit is real and not theoretical, the person raising it has a bona fide interest under the writing, and there is a defender or defenders with a bona fide right to defend, the court in which the suit is brought will not be held in error in assuming jurisdiction and rendering a declaratory judgment, even though there be no 'actual controversy.' Sheldon v. Powell, 99 Fla. 782, 128 So. 258."

It was also held in Sheldon v. Powell that the rendition of a declaratory decree is no less a judicial act when made before the right in question is invaded, and no consequential relief is sought or given, but that the act does not fit every occasion, and does not call for the scrapping of the balance of the system of action and remedies.

The present act, Chapter 21820, in Section 11, states that "its purpose is to settle and afford relief from insecurity and uncertainty with reference to rights, status and other equitable or legal relations." The language of that section, and of sections 1 to 5, is very broad, but much of the apparent danger is eliminated by section 10, which reads in part as follows:

"When declaratory relief is sought, all persons may be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings."

In many of the appeals which come to this court, I have noticed that the plaintiff's bill unnecessarily prays for a declaratory decree and then goes on to allege facts making out a complete case for some well settled equitable relief, independently of the declaratory judgments act, winding up with an appropriate prayer for specific equitable relief, such as injunction, impressment of a lien, foreclosure, specific performance, rescission, cancellation, and the like, which was the real object of the bill. Although the case made by the

bill and answer might have required the construction of a contract, deed, or other instrument in writing, or the validity of its execution, in order to determine the equities as between the parties and the adjudication of the existing suit, brought to redress some wrong or enforce some right, courts of equity had that jurisdiction long before declaratory judgment acts were even thought of. In other words, where there is an existing actual controversy between the parties to a real suit in equity, it is seldom if ever necessary to invoke the declaratory decree act. Perhaps this is some times done, in an abundance of caution, in cases where the plaintiff is in some doubt as to the equities of his case without invoking the declaratory judgment act.

Another principle adverted to in Mr. Justice TERRELL'S opinion in Sheldon v. Powell is that instead of this Court prescribing rules for the governance of proceedings under the act, authorized by the act then in effect, it would be safer for this court to follow the practice adopted by the English and New York courts "of exercising its discretion sparingly and with caution and by a gradual process of judicial inclusion and exclusion define the manner in which its discretion will be exercised in these matters." In view of the very broad language of the present act, this need for caution is all the more important. While the act might be given a liberal construction (as the act itself provides) as to those purposes of the act which are justiciable in their nature, and which can be dealt with properly by the judicial branch of the government, it should be cautiously construed whenever any conflict with fundamental constitutional principles appears, either in the language of the statute or in the attempted application of it to the facts of any particular case. Nor should it be so broadly construed as to make it a procedural juggernaut which would ride down and crush out other valuable well defined and time-proven equitable and statutory remedies. See in this general connection, 16 Am. Jur. Pages 287-288, and 295 et seq.; Borchard on Declaratory Judgments, pp 145, 156.

For these reasons, I think this act should be cautiously applied and construed, as was done in this case.

CHAPMAN, C. J., and SEBRING, J., concur.