**BORDEN CO., et al v. MILK COMMISSION.**
**No. 15685.**

Circuit Court, Leon County.

December 23, 1957.

</div>

18

Bedell & Bedell, Jacksonville, for plaintiffs generally.

Loftin & Wahl, Jacksonville, for Sealtest Southern Dairies Division, National Dairy Products Corp.

W. E. Arnow and Harry Duncan, Gainesville, for defendants.

BEN C. WILLIS, Circuit Judge.

This cause came on to be heard by the court on December 19, 1957 on the defendants' motion to dismiss the plaintiffs' complaint, and argument of counsel for the parties having been heard and the court being advised of its opinion in the premises, announced orally that the said motion would be denied. Thereupon, defendants filed their answer to the complaint—including therein their counterclaim against the plaintiffs.

Upon the filing of the answer and counterclaim the court proceeded to a hearing on plaintiffs' application for a temporary restraining order against the defendants, and also on defendants' application (in their counterclaim) for a temporary restraining

order against the plaintiffs. Argument of counsel having been heard on these matters, and the court now being advised of its opinion in the premises, makes and enters in this cause the following observations, orders and decrees—

The motion to dismiss the complaint is denied, it appearing to the court that the complaint states facts justifying the invoking of the powers of the court to enter a declaratory decree under provisions of chapter 87, Florida Statutes.

It is apparent from the allegations of the complaint that the plaintiffs "have rights, status or other equitable or legal relations . . . affected by a statute, or . . . regulation made under statutory authority," and that they may have determined "any question of construction or validity arising under such statute [or] regulation . . . or any part thereof, and obtain a declaration of rights, status or other equitable or legal relations thereunder." Section 87.02, Florida Statutes; McInerney v. Ervin (Fla.), 46 So. 2d 458; Parr v. Spires (Fla.), 41 So. 2d 336; and Ready v. Safeway Rock Co. (Fla.), 24 So. 2d 808. See also Watson v. Centro Espanol de Tampa (Fla.), 30 So. 2d 288.

The plaintiffs are milk distributors, as defined by section 501.02 of the statutes, and are licensed as such pursuant to section 501.09 (4). Defendants are the chairman and members of the Florida Milk Commission, an instrumentality of the state, created by and clothed with the powers set forth in chapter 501, Florida Statutes.

The issues raised by the pleadings present a number of serious and important questions with respect to the statutory powers of the commission to fix prices to be paid by distributors for milk purchased from the producers, also with respect to the powers of the commission to revoke licenses of distributors for refusal to accept and pay the fixed prices for milk offered to them by producers. Certain constitutional questions are also raised.

In addition, there is the threat of the distributors to reduce the purchases of milk from producers with whom they have in the past had an established course of dealing for the purchase of all milk offered by such producers.

The nub of the controversy may be gleaned from certain recent orders of the commission to become effective January 1, 1958, fixing prices for the first time on classes II and III milk, which the distributors claim are economically unsound to them, coupled with at least a real apprehension that the commission will take the position that refusal to take and pay the fixed prices for class II and III milk to producers with whom the distributors have had a pre-

vious course of dealing to take such milk would constitute violations of section 501.09 (3) (a) and/or section 501.13 (3) and proceed to a revocation of licenses.

On the other hand, the plaintiff distributors, who are some of the largest in the state, have actually notified their producers and have asserted in this suit that when the commission's orders fixing prices on class II and III milk become effective they will buy only from them such quantities as will be required for their class I needs.

Prior to this time, by a course of dealing founded upon an earned base or base percentage for each producer established during a base setting period, the distributors would take all milk, pay class I prices for the producer's "earned percentage" of milk which actually went into class I channels, and pay for the balance what the distributor considered to be the market price for butter fats and serum solids used in manufactured milk products.

To these announcements of intended changes of purchasing practices, the commission contends that such would constitute a rejection by a milk dealer "without reasonable cause or reasonable advance notice, milk delivered by or on behalf of a producer in ordinary continuance of a previous course of dealing" in which the contract had not been lawfully terminated, which is denounced by section 501.09 (3) (a), Florida Statutes, and made a ground for license revocation. The commission also asserts that the carrying out of such practices would constitute a failure on the part of the distributors to give fair and reasonable effect to the intent of the legislature that producers receive a fair return for their products, and thus violate section 501.13 (3) and render the offenders subject to injunction under section 501.08, Florida Statutes.

The issues thus raised clearly demonstrate the existence of substantial controversy between a considerable portion of the milk distributors of the state and the state instrumentality to which the legislature has committed broad and extensive powers to regulate, police and to a large measure discipline the multiple segments of the industry to the end that the public may receive an adequate supply of fresh and wholesome milk and that important, and indeed vital, agricultural and industrial interests may be economically sound.

Involved here primarily are the economic interests of the distributors and the producers. There is a conflict as to how these interests may be fairly and effectively blended. The existence of such controversy requires judicial determination of important legal questions which the processes of the courts should pursue with

promptness consistent with necessary deliberation. Also, pending such judicial determination, the controversy must not precipitate confusion and chaos in so vital an industry.

The court is of the view that there should be as little disruption of normal commercial processes as possible and that the status of the parties and allied interests should be known with some reasonable certainty pending final judicial determination of the issues raised.

It is accordingly further ordered, adjudged and decreed—

(a) That pending further order of this court, the defendants, as and constituting the Florida Milk Commission, be and the same are hereby enjoined from instituting any proceeding for the suspension or revocation of any license of the plaintiffs or any of them because of any refusal to accept and pay the prices for milk delivered by or on behalf of its producers in excess of those quantities or prices which would be applicable in ordinary continuance of a previous course of dealing with such producers. This temporary injunction shall become effective as to each plaintiff, upon the filing by such plaintiff of a good and sufficient bond, to be approved by the clerk of this court in the sum of $15,000 (except that the bonds of plaintiff Perret's Dairy Farm, Inc. and plaintiff Skaff & Sons Dairy shall be in the principal sum of $5,000 each), conditioned that the plaintiff shall abide by the decision of this court and pay such costs and damages as may be incurred or suffered by the defendants in the event they be found to have been wrongfully enjoined and restrained by this temporary injunction, and with the further condition that the plaintiff will well and truly pay to all of its producers such sum or sums as shall be owing to said producers in the event it shall be held finally in this cause that such plaintiff was obligated to accept the milk which it did accept and to pay for same in excess of the amount it did pay.

(b) That the plaintiffs and each of them be and the same are hereby enjoined, pending further order of this court, from rejecting, pursuant to the notices and reasons set forth in the complaint, on or after January 1, 1958, any milk delivered or tendered for delivery by or on behalf of any producer in ordinary continuance of a previous course of dealing, except where contract has been lawfully terminated; and the plaintiffs and each of them are further enjoined and restrained, pending further order of this court, from rejecting, except for reasonable cause or with reasonable advance notice, at any time or times, any milk delivered by or on behalf of producers in ordinary continuance of a previous course of dealing unless contract has been lawfully terminated.

22

In fixing the injunction bond in paragraph (a) above, the court is aware that the principal sum is probably inadequate to cover the liability of the distributors to producers in the event the condition of liability is found to exist. However, the court is also aware of the financial responsibility of the plaintiffs and concludes that the producers are adequately protected.