CARROLL, DONALD K., Judge.
The defendants in a suit seeking declaratory relief have taken this interlocutory appeal from an order entered by the Circuit Court for Duval County denying their motion to dismiss the plaintiff’s complaint.
The question presented for our determination in this appeal is whether the chancellor in that order properly denied the defendants’ said motion under the statutory and decisional law of this state applicable to suits for declaratory decrees.
The basic contentions made by the defendants-appellants in this appeal are that under the said law the allegations of the plaintiff’s complaint show that the plaintiff is not entitled to declaratory relief because: (1) an action at law for breach of contract is the normal, orderly, and well-established remedy available to the plaintiff; (2) the purpose of the statute authorizing a declaratory relief is to provide a means of preventive relief, on account of the desirability of resolving uncertainties which may affect the future conduct of the parties; and (3) another well-established remedy is available to the plaintiff and a suit for declaratory relief may not be maintained unless a bona fide basis for such relief exists. This last contention is, of course, very similar to the first contention above, and, therefore, in our opinion below we shall discuss both of these two contentions together, as if they constituted but one.
The allegations of the plaintiff’s complaint that seem to relate to the contentions made by the defendants in this appeal are substantially as follows:
The plaintiff, Duval County, a political subdivision of the State of Florida, hereinafter referred to as the County, brings this suit for declaratory, injunctive, and other relief pursuant to Chapter 87, Florida Statutes, F.S.A., against the defendant Jacksonville Expressway Authority, a body politic and corporate, and an agency of the State of Florida, hereinafter referred to as the Authority, and against the defendant, The Barnett First National Bank of Jacksonville, a national banking institution, hereinafter referred to as the Trustee.
The County in its complaint seeks a declaratory decree respecting the obligations of the Authority to pay to the County from the “Construction Fund” the sum of $90,000 in expenses incurred by the County in connection with the 1963 issue of Expressway Revenue Bonds by the Authority. The Trustee holds the said fund as trustee. The Authority in 1962 requested the County to consent to the pledge “of the 80 per cent surplus gasoline tax funds accruing to the State Road Department for use in Duval County” as part of the security for the above-mentioned bonds. In order to determine whether it should consent to the said pledge and to the feasibility of the so-called “System Improvement Project,” the County necessarily incurred expert legal and financial advice at the cost of $90,000. As a further inducement to obtain the County’s consent to the proposed pledge, the Authority agreed that, if the County should so consent and the said bonds thereafter be issued and sold, the expenses thus incurred by the County “would be paid out of the Construction Fund as part of the cost of the System Improvements Project.”
The County further alleges in its complaint that on June 8, 1964, the said financial and legal advisers submitted their statements for services to the Board of County Commissioners, which found them reasonable, just, and proper, approved the statements for payment, and thereafter requested the Authority to cause the Trustee to pay such fees. Notwithstanding its alleged duty to cause the Trustee to make the requested payment, the Authority by a letter dated December 22, 1964, returned the said statements to the said board, asserting that the contractual relationship between the County *839 and the said advisers “became effective subsequent to the passage of Chapter 63-335, Florida Laws, relating to the Bond Review Board of the State of Florida, and that the Authority is without power to pay plaintiff the sums requested until such payment shall have been approved by the Bond Review Board.” On May 6, 1965, the County’s attorney on its behalf requested that the Authority take the action necessary to cause the said statements to be paid without further insisting that such payment must first be approved by the Bond Review Board. Nevertheless, the Authority, by letter dated May 28, 1965, referred the entire matter to the Bond Review Board.
Thus, contends the County in its complaint, a controversy exists between the County and the Authority as to the latter’s duty to cause the Trustee to make the payment requested without further delay and irrespective of the approval or advice of the Bond Review Board. In support of its position in this controversy the County cites and relies on various statutory and contractual provisions. There is no need for us here to set forth and discuss those provisions, for, as we shall point out later, the merits of the parties’ positions need not be determined in this interlocutory appeal.
In the order appealed from herein, denying the defendants’ motion to dismiss the above complaint, the chancellor revealed the following as his ratio decidendi in making the said ruling:
“It appears that there is a bona fide controversy between the parties, and the complaint states a classic situation for declaratory relief under Chapter 87, Florida Statutes [F.S.A.]. See McInerney v. Ervin (Fla.), 46 So.2d 458, and Rosenhouse v. [1950 Spring Term] Grand Jury (Fla.), 56 So.2d 445. In this, connection, Chapter 87.02 specifically provides that any person claiming to be interested in a contract or whose rights or relations are affected by a statute, or any regulation made under statutory authority, may have determined any question of construction . or validity arising under such statute or contract and obtain a declaration of rights.”
The provisions of Chapter 87, Florida Statutes, F.S.A., invest the circuit courts of this state with the authority and jurisdiction, upon a filed complaint, “to declare rights, status and other equitable or legal relations * * (Section 87.01). The statutory conditions prerequisite to the exercise of such authority and jurisdiction are stated in Section 87.02, which reads:
“Power to construe, etc. — Any person claiming to be interested or who may be in doubt as to his rights under a deed, will, contract or other article, memorandum or instrument in writing or whose rights, status or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum or instrument in writing, or any part thereof, and obtain a declaration of rights, status or other equitable or legal relations thereunder.”
Considering literally the terms of the just-quoted statute and the other provisions of Chapter 87, we agree with the chancellor’s characterization of the situation stated in the complaint as a “classic situation for declaratory relief under Chapter 87, Florida Statutes [F.S.A.].” In its complaint the County clearly states that it seeks a declaration of its rights, status, or other equitable or' legal relation under a statute or contract.
Since we are of the view that'the subject about which a declaration is sought in the present suit falls squarely within the provisions of Section 87.02, there is no need to invoke the provisions of Section 87.05, which state that the “enumeration in §§ 87.02, 87.03 and 87.04 does not limit or re *840 strict the exercise of the general powers conferred in § 87.01, in any proceeding where declaratory relief is sought * * Nor, for the same reason, is there any need to invoke the provisions of Section 87.11, reading as follows:
“Construction of law. — This chapter is declared to be substantive and remedial; its purpose is to settle and to afford relief from insecurity and uncertainty with respect to rights, status and other equitable or legal relations; and is to be liberally administered and construed.”
Nevertheless, despite the apparently very broad scope of the statutes quoted above, we agree with the view expressed by the Supreme Court of Florida in Ready v. Safeway Rock Co., 157 Fla. 27, 24 So.2d 808 (1946), that the statute authorizing declaratory relief should not be “ * * * so broadly construed as to make it a procedural juggernaut which would ride down and crush out the other valuable, well defined and time-proven equitable and statutory remedies.”
This thought leads us to a discussion and evaluation of the first and third points posed by the appellants in this appeal — to the effect that the plaintiff’s suit for declaratory relief should be dismissed because of the availability to the plaintiff of another adequate, well-established remedy, to-wit, an action at law for damages for breach of contract.
At first consideration, these two points on appeal appear to fly in the face of the express provisions of Section 87.12, reading:
“Adequate remedy does not preclude. —The existence of another adequate remedy shall not preclude a decree, judgment or order for declaratory relief. The circuit court may order a speedy hearing of an action for a declaratory decree, judgment or order and may advance it on the calendar. When a suit for declaratory decree is filed as provided in this chapter the court shall have power to give as full and complete equitable relief as it would have had if such proceeding had been instituted as a suit in equity.”
Nevertheless, in spite of the broadly-stated scope of the provisions of Chapter 87, the Supreme Court of Florida has pointed out that those provisions do not authorize the substitution of declaratory relief for all other established remedies. For example, in Bowden v. Seaboard Air Line Railroad Co., 47 So.2d 786 (1950), that court said:
“Although our Declaratory Decree Act is broad in its scope and should be liberally construed in order to effectuate its purpose, it was never intended that it should supplant all other types of civil procedure known to our jurisprudence.”
To the same effect see Florida Hotel & Restaurant Commission v. Marseilles Hotel Co., 84 So.2d 567 (Fla. 1956).
On the other hand, the Supreme Court of Florida has with equal clarity pointed out that, “within the sphere of anticipatory and preventive justice,” the use of the declaratory judgment procedure “should be extended, its scope kept wide and liberal, and its boundaries elastic.” Such was the holding of our Supreme Court in Sheldon v. Powell, 99 Fla. 782, 128 So. 258 (1930), saying:
“In its inception, the purpose of the declaratory judgment was to ‘serve as an instrument of preventive justice,’ to render ‘practical help’ in determining issues, and to adjudicate the rights or status of parties, without the peril of committing a crime or resorting to violence or breach to put the legal machinery in motion. It is inhibitory of injury. ‘Within the sphere of anticipatory and preventive justice, its use should be extended, its scope kept wide and liberal, and its boundaries elastic. But it does not fit every occasion and it does not call for the scrapping of the balance of the system of remedies and actions.’ We have examined a great many cases involving applications for declaratory judgments and, while the authorities are not *841 altogether uniform, they have generally been refused in * * * cases * * * where (they) would serve no useful purpose * *
In the just-quoted decision in the Sheldon case, our Supreme Court also had occasion to distinguish actions at law from suits for declaratory relief, saying:
“The common-law judgment cannot be secured until a right has been invaded or an injury imposed, while the declaratory decree contemplates that parties may be in doubt as to their rights, and that they may have a judicial determination of them before wrong has been committed or damage done. * * * ”
In addition to the said distinction between such suits and actions, the County in its appellate brief argues that an action at law would not afford an adequate remedy, because a money judgment would not be available against the Authority, which did not obligate itself generally or in all events to be responsible for the County’s debts, nor be available against the Trustee, whose duty is only to pay over amounts requisitioned by the Authority. Besides, it was appropriate for the County to file its complaint in equity, where it could and did pray for supplemental and coercive relief by way of injunction, if such should be necessary to enforce the rights to be determined by the declaration prayed for.
Another argument made by the County in support of its use of the declaratory judgment procedure in the case at bar, is founded upon the rule recognized by the Supreme Court of Florida in Overman v. State Board of Control, 62 So.2d 696 (1952) that the Declaratory Judgments Act is particularly appropriate to resolve controversies arising within the government of the State of Florida as to the power of a State officer or agency to effect the disbursement of public funds. In that case the State Board of Control sought a declaration of the power of the Governor and Comptroller to transfer certain funds to the University of Miami under the provisions of a legislative act. The said officials questioned the appropriateness of declaratory relief. The Supreme Court said: ,
“In their amended answer the Governor and the Comptroller say they are in doubt as to their authority to draw and countersign warrants for the disbursement of these funds. Disbursing such an amount imposes a grave duty on the Governor and the Comptroller. We think this fact alone is sufficient to invoke the declaratory judgments act. In addition to this reason, the Board of Control, a very important arm of the State Government, is clothed with a most important function under the act and is importuning us to construe it for their guidance. I think there is ample showing for declaratory judgment.”
The County’s argument, as set forth in the preceding paragraph, is, we think, a valid one as applicable to the case at bar, which essentially involves a controversy between a political subdivision of the State and a State agency concerning the disbursement of public funds.
A final consideration in the present appeal is the fact that in the order on review the chancellor denied the defendants’ motion to dismiss the complaint seeking declaratory relief and that special rules uniquely apply in considering the validity of motions to dismiss such a Complaint. We explained this difference in the applicable standards in Hankins v. Title and Trust Co. of Florida, 169 So.2d 526 (Fla.App. 1964), as follows:
“Under the Florida Rules of Civil Procedure a pleading which sets forth a claim for relief, such as in a complaint, 'must state a cause of action, and must contain allegations of fact sufficient to show the jurisdiction of the court.’ (Rule 1.8(b), 30 F.S.A.) In actions other than declaratory judgment proceedings, under the just-quoted rule the test of the *842 sufficiency of a complaint is whether, if the factual allegations of the complaint are established by proof or otherwise, the plaintiff will be legally or equitably entitled to the claimed relief against the defendant.
“A different rule, however, uniquely applies in declaratory judgment proceedings. All of the appellate courts of Florida have recognized the rule that in such proceedings the test of the sufficiency of the complaint is not whether the complaint shows that the plaintiff will succeed in getting a declaration of rights in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all. See Rosenhouse v. 1950 Spring Term Grand Jury, 56 So.2d 445 (Fla. 1952), Modernage Furniture Corp. v. Miami Rug Co.; 84 So.2d 916 (Fla. 1955), North Shore Realty Corp. v. Gallaher, 99 So.2d 255 (Fla.App. 1957), Bartholf v. Bartholf, 108 So.2d 905 (Fla.App. 1959), Platt v. General Development Corp., 122 So.2d 48 (Fla.App. 1960), and Jackson Tom, Inc. v. Carlton, 133 So.2d 752 (Fla.App. 1961).”
As we did in the above Hankins case, we deem it proper here to comment that, in upholding the chancellor’s denial of the defendants’ motion to dismiss the County’s complaint, we are not passing upon the merits of this litigation one way or the other. All we are holding is that the allegations of the County’s complaint show that the County is entitled to a court declaration of its rights pursuant to the provisions of Chapter 87, Florida Statutes, F.S.A., whether such declaration be in accordance with or contrary to the County’s contentions.
For the foregoing reasons, we conclude that the chancellor correctly entered the order appealed from, denying the defendants’ motion to dismiss the complaint. In fact, we concur in the chancellor’s finding that here “there is a bona fide controversy between the parties, and the complaint states a classic situation for declaratory relief under Chapter 87, Florida Statutes [F.S.A.].” Therefore, we hold that this interlocutory appeal, being without substantial merit, should, pursuant to Rule 4.2 of the Florida Appellate Rules, 31 F.S.A., be and it is
Dismissed.
WIGGINTON, Acting C. J., and JOHNSON, J., concur.