830 So.2d 148 (2002)
The STATE of Florida, Publix Supermarkets, Citizens for a Sound Economy, Associated Industries of Florida, Florida Chamber of Commerce, Florida Institute of CPA's, Florida Medical Association, Florida Retail Federation, Florida United Business Association, National Federation of Independent Business, Association of Community Hospitals and Health System of Florida, Inc., City of Orlando, Dade County, Florida Association of Counties, Florida League of Cities, Florida Sheriffs Association, Tort Reform United Effort (True), Florida Farm Bureau Federation, Usher Land & Timber, Inc., M.A. Rigatoni, Inc., Rodney Schwab, Dietrich Brothers, Inc., a/k/a Flying "D" Ranch, and H. Fred Dietrich III, Appellants,
v.
FLORIDA CONSUMER ACTION NETWORK, Coalition for Family Safety, Inc., Florida League of Conservation Voters, Florida AFL-CIO, Association of Flight Attendants, AFL-CIO, Des Action USA, The Academy of Florida Trial Lawyers, Inc., Florida State Conference of NAACP Branches, Florida National Organization of Women, Inc., Children's Advocacy Foundation, Inc., Al J. Cone, and The Florida State Council of Senior Citizens, Inc., Appellees.
No. 1D01-787.
District Court of Appeal of Florida, First District.
October 9, 2002.
Rehearing Denied November 15, 2002.
*150 Thomas E. Warner, Solicitor General, Richard A. Hixon and T. Kent Wetherell, II, Deputy Solicitors General, Robert A. Butterworth, Attorney General, Louis F. Hubener, Assistant Attorney General, Tallahassee, for Appellant State of Florida.
Joseph W. Hatchett of Akermann, Senterfitt & Eidson, P.A., Tallahassee; Raymond Ehrlich, Holland & Knight, Jacksonville; and George N. Meros, Jr. of Gray, Harris & Robinson, P.A., Tallahassee, for Appellants Publix Supermarkets, Citizens for a Sound Economy, Associated Florida Chamber of Commerce, Florida Institute of CPA's, Florida Medical Association, Florida Retail Federation, Florida United Business Association, National Federation of Independent Business, Association of Community Hospitals and Health System of Florida, Inc., City of Orlando, Dade County, Florida Association of Counties, Florida League of Cities, Florida Sheriffs Association, and Tort Reform United Effort (TRUE).
Frank A. Shepherd, Miami; Deborah J. LaFetra, Pro Hac Vice, Pacific Legal Foundation, Sacramento, CA, for Appellants Florida Farm Bureau Federation, Usher Land & Timber, Inc., M.A. Rigatoni, Inc., Rodney Schwab, Dietrich Brothers, Inc., and H. Fred Dietrich III.
Wayne Hogan of Brown, Terrell, Hogan, Ellis, McClamma & Yegelwel, P.A., Jacksonville; William C. Gentry of W.C. Gentry, P.A., Jacksonville; Robert S. Peck, Pro Hac Vice Center for Constitutional Litigation, P.C., Washington, D.C.; Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach; Paul D. Jess, Academy of Florida Trial Lawyers, Tallahassee; Lake Lytal, Jr. of Lytal, Reiter, Clark, Fountain & Williams, West Palm Beach, Howard C. Coker of Coker, Myers, Schickel, Sorenson, et al., Jacksonville; Karen A. Gievers, Tallahassee; W. Dexter Douglass, Tallahassee; Dan B. Hendrickson, Tallahassee; and Joel S. Perwin, Miami, for Appellees.
ERVIN, J.
The State of Florida and intervenors, Publix Supermarkets, et al., appeal the trial court's summary judgment declaring chapter 99-225, Laws of Florida, unconstitutional for covering more than a single subject. Appellants raise essentially two issues: (1) the trial court erred in exercising jurisdiction over this suit against the State of Florida under the Declaratory Judgment Act, and (2) the court erred in holding that chapter 99-225 violates the single-subject requirement of Article III, Section 6, of the Florida Constitution. Because we reverse as to appellants' first point, agreeing that no justiciable controversy, essential for the issuance of declaratory judgment, was alleged to exist between the parties, we do not reach the second.
Following the enactment of chapter 99-225, a comprehensive bill addressing multiple aspects of civil litigation,[1] a group of *151 organizational plaintiffs, appellees Florida Consumer Action Network, et al., filed a complaint for declaratory judgment against Governor Jeb Bush and the State of Florida, alleging in 16 counts why they considered the law unconstitutional. They contended in count 16 that chapter 99-225 violated the single-subject requirement of Article III, Section 6, of the Florida Constitution "by embracing a myriad of subjects and thereby becoming a vehicle for logrolling by a variety of special interests that sought specific and unrelated protections from liability concerns." Defendants thereafter filed a motion to dismiss, claiming there was no live controversy between the parties. The trial court denied the motion and subsequently entered summary final judgment, finding the law to be a violation of the constitution's single-subject requirement.
In addressing the state's argument that the court lacked subject-matter jurisdiction to render a declaration of the plaintiffs' rights under chapter 99-225, pursuant to section 86.021, Florida Statutes (1999), for the reason that no controversy exists between the parties, the court responded that declaratory relief was appropriate under the "ripening seeds of controversy" theory. The court interpreted this theory to mean that even though the parties' differences may not yet have become an actual controversy, a cause of action could nevertheless be maintained because the plaintiffs' claims demonstrated that litigation is imminent and unavoidable in the immediate future. The court particularly stressed plaintiffs' entitlement to a declaration of their rights because of the "insecurity and uncertainty" arising from the passage of the act.
In so deciding, the court apparently overlooked the often-quoted general rule for determining whether a court has jurisdiction over a chapter 86 action:
Before any proceeding for declaratory relief should be entertained it should be clearly made to appear that there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest[s] are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity. These elements are necessary in order to maintain the status of the proceeding as being judicial in nature and therefore within the constitutional powers of the courts.
May v. Holley, 59 So.2d 636, 639 (Fla. 1952) (emphasis added). Accord Santa Rosa County v. Admin. Comm'n, Div. of Admin. Hrgs., 661 So.2d 1190, 1192-93 (Fla.1995).
*152 In upholding a complaint that was utterly devoid of any allegation of a present controversy, and that failed to name a person who had any actual adverse interest in the subject matter of the litigation, the lower court misapplied the ripening seeds of controversy doctrine. The term is not a broad exception to the requirement of adversity or conflict. While one may seek a declaration of his or her rights without an allegation of actual injury, an aggrieved party must nonetheless make some showing of a real threat of immediate injury, rather than a general, speculative fear of harm that may possibly occur at some time in the indefinite future. The ripening seeds reference was first used in Florida case law in a concurring opinion by Justice Brown in Ready v. Safeway Rock Co., 157 Fla. 27, 24 So.2d 808, 811 (1946), wherein he quoted from 16 American Jurisprudence, Declaratory Judgments, section 10, as follows:
"[I]t is clear that to constitute an actual controversy so as to render these [declaratory judgment] acts applicable, there need not exist an actual right of action on one party against the other in which consequential relief might be granted. `In a number of cases it has been held and in others intimated that the appearance of "ripening seeds of a controversy" is sufficient. Within this rule the "ripening seeds of a controversy" appear where the claims of the several parties in interest are present and indicative of threatened litigation in the immediate future which seems unavoidable, even though the differences between such parties as to their legal rights have not yet reached the stage of an actual controversy,' which involves the active pressing of the claim on the one side and active opposition thereto on the other."
In reaching its decision, the lower court apparently failed to take into consideration an earlier portion of the treatise which Justice Brown also quoted that explained: "`[T]he interest of the parties arising out of their relationship to each other and to the subject of the controversy must be more than merely general. It must be a substantial present interest in the relief sought....'" Id.
A case which the lower court relied upon in its order, Platt v. General Development Corp., 122 So.2d 48 (Fla. 2d DCA 1960), illustrates the type of situation in which the claims of the parties had not yet led to actual litigation, but which was nonetheless deemed appropriate for declaratory relief. In Platt, the owners of certain real property leased the property to a lessee for 20 years, allowing him an option to purchase the land during the 20-year period, but reserving to themselves use of the property for the full term of the lease. A lease-option agreement was also prepared, providing for the full term of the lease unless it was terminated in accordance with the lease and option agreement. A subsequent lessee entered into a sales agreement with General Development Corporation (GDC), which notified the owners that it intended to exercise its option to purchase, whereupon they replied they would not surrender possession until the lease expired. GDC sought a declaration of its rights under the lease. The owners moved to dismiss the complaint, contending that GDC's interest was speculative, because GDC might not conclude its purchase of the option agreement or exercise the option. In affirming the trial court's order denying the motion to dismiss, the Second District held that GDC's statement of its intent to purchase indicated the threat of "litigation in the immediate future which seems unavoidable," and a "bona fide dispute as to the construction of the agreements," establishing that GDC "might well have been in doubt" regarding its rights *153 under the contracts and the facts alleged, which was sufficient to warrant a declaratory decree. Id. at 50-51.
In stark contrast to Platt, the plaintiffs' asserted claims of injury below were nonspecific and hypothetical, and did no more than question the constitutionality of chapter 99-225 based on vague, general fears of possible future harm. A typical example of the injuries alleged throughout the complaint is that by the Coalition for Family Safety, Inc., a nonprofit corporation organized for the purpose of promoting social welfare and family safety, which averred that the passage of the act denied Floridians the right of having an effective means "of assuring product, family and personal safety through the civil justice system," which caused its members, including senior citizens, to be "worried about inadequate medical and nursing home care; workers ... about on-the job safety; parents seeking safeguards and protection for their children; and doctors whose use of medical products can have life or death consequences."
The above and all other allegations in the complaint regarding each plaintiff's need for a declaratory decree are grounded on speculation and hypothesis. Compare Dep't of Ins. v. Guarantee Trust Life Ins. Co., 812 So.2d 459 (Fla. 1st DCA 2002) (finding that no present controversy existed for the exercise of the trial court's declaratory judgment jurisdiction, because the plaintiffs, insurance companies regulated by the Department of Insurance, alleged in their complaint challenging the constitutionality of a statute affecting an insurer's right to seek premium rate increases, only the mere possibility that the Department might, during some indefinite period in the future, disapprove their rate increase requests under the procedure afforded in the statute). Plaintiffs failed to identify how any particular provision in chapter 99-225 would directly affect or harm them. Nor did plaintiffs dispute the meaning or impact of any individual provision or law; they apparently only want the laws struck, because they oppose their substantive content. The sole doubt they expressed was whether they have to obey the laws that they contend affect them, because, in their opinion, the legislation is unconstitutional. Obviously, such allegations cannot make out a proper case for the exercise of a court's declaratory judgment power.
Indeed, the inclusion of the state as the only named defendant[2] was not based on any assertion of adversity. The sole allegation in the complaint pertaining to the state's party status was in paragraph 17, saying: "Defendant State of Florida is a sovereign state, obligated to follow the limitations on its authority found in the organic act of the People of Florida in promulgating the Florida Constitution." Although the state may be made a party pursuant to section 86.091, Florida Statutes (1999), allowing the attorney general to be served with a copy of the complaint whenever a statute is alleged to be unconstitutional, it is obvious that the statutory authorization does not create the adverse or antagonistic interest necessary for the exercise of the court's declaratory-relief jurisdiction. Indeed, in Ervin v. Taylor, 66 So.2d 816 (Fla.1953), the court reversed a declaratory decree, noting that there were no named defendants in the petition, and the state was added only because of the statutory provision permitting the state's inclusion due to the attack on a statute's constitutionality. The court concluded: "There were no adversaries, and *154 being none, there was no actual controversy." Id. at 817.
The lower court also justified its denial of the motion to dismiss on the theory that because the complaint alleged taxing and spending violations in the disputed statute, no special injury need be alleged, citing Chiles v. Children A, B, C, D, E, & F, 589 So.2d 260, 263, n. 5 (Fla.1991). Unlike the statute at issue in Chiles, chapter 99-225 is neither a taxing nor spending measure. The plaintiffs essentially alleged that the statute's enactment would result in increased public welfare expenditures, presumably through the state's increased Medicaid contributions caused by the legislative shift of the costs of injuries from the private sector to the public. Even if chapter 99-225 could somehow be considered to enact a tax or an appropriation, plaintiffs would still not be relieved from the responsibility of alleging an appropriate justiciable controversy for declaratory judgment purposes. See City of Pensacola v. Johnson, 159 Fla. 566, 28 So.2d 905 (1947) (finding that a suit for declaratory relief to determine the rights of persons owning homestead property within a municipality under a special act authorizing the issuance of municipal bonds was premature, because the city had not yet conducted an election for the approval of such bonds; consequently, there was no justiciable issue for the court to decide).
Nevertheless, because the only constitutional issue that the court below addressed pertained to a single-subject violation, we certify the following question to the Florida Supreme Court to be of great public importance:
WHETHER THE REQUIREMENT THAT THERE BE A JUSTICIABLE ISSUE BETWEEN ADVERSE PARTIES IN A DECLARATORY JUDGMENT SUIT IS LESS STRINGENT IN A CHALLENGE PURSUANT TO ARTICLE III, SECTION 6, OF THE FLORIDA CONSTITUTION, BECAUSE THE SINGLE SUBJECT ANALYSIS IS PURELY A MATTER OF LAW REQUIRING CONSIDERATION ONLY OF THE FOUR CORNERS OF THE SESSION LAW RATHER THAN A FACTUAL DISPUTE, AND WOULD THUS PERMIT A COMPLAINT BROUGHT BY PARTIES WHO WILL IN THE FUTURE BE AFFECTED BY OPERATION OF THE LAW?
The final summary judgment granting declaratory relief is REVERSED, and the cause is REMANDED to the trial court with directions to dismiss the complaint with prejudice.
VAN NORTWICK J., concurs. BROWNING, J., concurring and dissenting with opinion.
BROWNING, J., concurring in part and dissenting in part.
It seems to me that the disposition of this appeal is controlled by Chiles, 589 So.2d at 260contrary to the majority opinion. The principle stated in Chiles, and a comparison of the facts there with the facts here, make it clear that appellees have standing to challenge chapter 99-225, Laws of Florida. Moreover, I am fortified in my belief that standing exists here by the Declaratory Judgment Act's purpose, and the rules of construction pertaining to its application.
In Chiles the Florida Supreme Court stated the rationale that supports affirmance of the standing issue here.
Initially, [footnote omitted] the Commission challenges the appropriateness of the trial court order granting the children's request for declaratory relief. [footnote omitted] The purpose of declaratory relief *155 is "to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations" and thus the declaratory judgment statute is to be construed liberally. § 86.101, Fla. Stat. (1989). This Court has held that to "entertain a declaratory action regarding a statute's validity, there must be a bona fide need for such a declaration based on present, ascertainable facts or court lacks jurisdiction to render declaratory relief." Martinez v. Scanlan, 582 So.2d 1167, 1170 (Fla.1991). Additionally, this Court has upheld a grant of declaratory relief when the cause involved the public interest in the settlement of controversies in the operation of essential governmental functions and in the disbursement of public funds. See Overman v. State Bd. of Control, 62 So.2d 696 (Fla.1952). We find the children have demonstrated the existence of present ascertainable facts which were sufficient to permit the trial court to afford declaratory relief.
Id. at 263. [Emphasis added]
Chapter 99-225 enacts sweeping "tort reform" that touches 33 different areas involving the implementation of crucial procedures in the judicial branch. Subjects such as civil procedure, venue, product liability, attorney discipline, employment law, rules of evidence, damages, and apportionment, etc., all relate to essential governmental functions, i.e., the regulation of the judiciary, that without question will affect a large number of appellees' members as well as the general public. In my judgment this constitutes a controversy under the Declaratory Judgment Act as interpreted in Chiles.
The facts here do not support distinguishing this case from Chiles. To the contrary, a comparison of the facts in Chiles with those here supports affirming the trial court on the standing issue. In Chiles the issue was the constitutionality of a statute authorizing the Governor and an administrative commission to order budget reductions of state agencies in case of an unanticipated revenue "shortfall." A "shortfall" occurred and a reduction was ordered. This action was challenged by appellees, six children, who were enrolled in a state program as foster children, and the budget for that program was being reduced. The appellees suffered no specific form of legal injury beyond that of all children enrolled in the program subject to general "belt tightening" caused by the budget cuts. No allegations were made that they would be denied any essential services or suffer any special impact except a possible undetermined one related to being program enrollees subject to a budget cut. On these allegations the trial court ruled the applicable statute to be unconstitutional, and the Supreme Court affirmed and specifically overruled the challenge to the appellees' standing. It seems to me that if the facts in Chiles afforded standing, certainly the facts here do, as they involve issues that affect appellees more significantly and directly than the issues in Chiles. Chapter 99-225 comprises 36 sections creating or amending 33 sections of Florida Statutes, and 16 are new. There are 104 different provisions listed in the title. These provisions enact numerous legal changes that affect the legal system and related areas. It is clear to me that based upon reasonable litigation probabilities, it is much more likely that the citizens represented by appellees will be, and are, affected more substantially than the six children-appellees in Chiles who, at best, were only minimally affected.
Finally, it seems to me that the Declaratory Judgment Act's purpose and the applicable *156 rules of construction also support my view. The Florida Supreme Court early on enunciated that purpose is to "relieve litigants of the common-law rule that no declaration of rights may be judicially adjudged until a right has been violated and to serve as an instrument of preventive justice." Watson v. Claughton, 160 Fla. 217, 34 So.2d 243 (1948). Moreover, the Act is to be liberally construed. Chiles, 589 So.2d at 263. These principles augment my other reasons for affirmance.
In conclusion, I would affirm the trial court on the standing issue, just as the Ohio Supreme Court did in the analogous case of State ex rel. Ohio Academy of Trial Lawyers v. Sheward, 86 Ohio St.3d 451, 715 N.E.2d 1062 (Oh.1999), and consider this appeal on the merits.
For these reasons, I dissent and concur only in the majority's certification.
NOTES
[1] Chapter 99-225 comprises 36 sections and contains extensive revisions to Florida's tort system. Its provisions include requiring mediation in certain types of actions and creating trial-resolution judges; amending chapter 90, relating to evidence of remedial measures; creating section 768.0705, pertaining to the limitation of liability if security measures are undertaken by convenience-store owners; amending section 768.075, restricting the liability of possessors of land to trespassers; placing caps on punitive damages; amending section 768.075, concerning trespassers' liability; amending chapter 95, regarding computation of time under statutes of limitation; apportioning damages under comparative fault; and imposing sanctions for unsupported claims or defenses.
[2] Although plaintiffs initially named both the governor and the State of Florida as party defendants, they later voluntarily dismissed the governor from the suit.